CASE 91—PETITION EQUITY—JUNE 1.

# Graves, &c v. Spurr, Trustee.

### APPEAL FROM CLARK CIRCUIT COURT.

1. **DEVISE OVER UPON DEATH WITHOUT ISSUE.**—Where a testator devised to a granddaughter, one of five children of a deceased daughter, one-fifth part of certain land, "to make her one equal portion with her brother and sisters, and at her death to her child or children, and if she leave none to her brother and sisters," with the same limitation over as to the share of each of the other grandchildren, upon the death of the granddaughter without issue her share passed not merely to her surviving brother and sisters, but also to the child of a sister who had died since the testator, that child taking by descent the interest which her mother, if living, would have taken, the interest of each of the original devisees in the share of any one of them that might die without issue being so far a vested interest as to be descendible.

2. **CONTINGENT ESTATES—WHEN DESCENDIBLE.**—All contingent estates of inheritance as well as springing and executory uses and possibilities coupled with an interest, when the person to take is certain, are transmissible by descent, and are devisable and assignable. If the person be not ascertained then they can not be either devised or descended at the common law. This uncertainty as to the person is usually held to arise where the estate is given over, after a life estate, to the survivor of a class of persons, but that is not the case here.

3. **ALL WILLS SPEAK AS OF THE DATE OF THE DEATH OF THE TESTATOR,** and must be interpreted in the light of all the surrounding facts and circumstances, considering the estate in hand and the objects of the testator's bounty.

4. EVERY TESTATOR IN MAKING HIS WILL SHOULD BE PRESUMED TO KNOW THE LAW of his domicile with reference to devises and also the law of descents.

BRONSTON & ALLEN AND G. B. NELSON FOR APPELLANTS.

1. The appellee does not take *us devisee* the share which his mother, if living, would take. The term "brother and sisters" does not include the children of brother and sisters.
2. The will created in Mrs. Goff a contingent remainder which never took effect because of her death before the happening of the contingency; and therefore appellee does not take by descent from her. (Fearne on Remainders, 150; Gorham v. Betts, 86 Ky., 165; Leppes v. Lee, 92 Ky., 17.)

JAMES F. ASKEW ON SAME SIDE.

The words of the will are plain and unambiguous. The term "brother and sisters" does not include nephews and nieces. The intention of the testator is to be gathered from the language of the will. (Fields v. Fields, 14 Ky. Law Rep., 866; Best v. Conn, 10 Bush, 37; Prescott v. Bayless, 79 Ky., 252; Gorham v. Betts, 86 Ky., 165; Birney v. Richardson, 5 Dana, 429.)

BRECKINRIDGE & SHELBY FOR APPELLEES.

1. Where there is a devise to several with a limitation over, in the event of the death of either without issue, to the others, the issue of· one of the devisees who has died will take the interest of his parent in the share of one subsequently dying without issue; and to such an extent is this result favored that even where the limitation over is in terms to "the survivors," the word "survivors" is often construed as "others" in order to effectuate it. (Wilmot v. Wilmot, 8 Vesey, Jr., 10, Birney v. Richardson, 5 Dana, 429; Harris v. Berry; 7 Bush, 113; 2 Redf. on Wills, chap. XIV, clause 15, page 765; Smith v. Osborn, 6 House of Lords Cases, 393, 399.)
2. The contingent interest of each of the devisees in the portions of the others is a descendible one; so that the issue of a predeceased member of the class takes by inheritance its ancestor's right in the share of one subsequently dying under the prescribed conditions. (4 Kent, side page 261-2; Jones v. Roe, 3 Term Rep., 88; Winslow v. Goodwin, 7 Met. (Mass.), 377-83; 1 Redf. on Wills, page 391 (chap. IX, clause 18); 2 Id. page 759 (chap. XIV, sec. 70, clause 7); 1 Fearne on Rem., side page 364; 20 Amer. & Eng.

Ency. of Law, 968-9; Note to Snelling v. Lamar, 17 Am. St. Rep., 840; Cummings v. Stearns, 161 Mass., 506.)

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

The questions in this appeal arise on the will of Jacob Hughes, published in 1874, in which he undertook to provide for his grandchildren, of whom there were two sets; one, the children of his daughter, Julia Sheffer, and the other the children of another daughter, Jane Graves. Of the former, there were four, and of the latter there were five.

Testator divided his estate into two equal.parts, and gave to each set an equal proportion of one-half, thus dividing his estate, as to the Sheffer children, into four parts, and as to the Graves children, into five parts. Of the Graves children there were one son and four daughters. The clause of his will upon which the question arises is as follows, viz:

"I give to Richard Spurr, W. T. Hughes and Jacob H. Graves and their survivors in trust, for the use and benefit of Eleanor Graves, one-fifth part of the one-half the land that I die possessed of, to make her one equal portion with her brother and sisters, and at her death to her child or children, and if she leave none, to her brother and sisters."

By a similar clause testator gave to each of the sisters, Elizabeth, Julia and Harriet, and to the only brother, Jacob H. Graves, one-fifth of one-half of his estate for life with the same limitation over to the child or children of each, and if none, then to the brother and sisters. Similar bequests, with similar limitations, were made to his grandchildren, the Sheffers.

After the death of testator, his granddaughter, who had married one L. D. Goff, died, leaving the defendant, Ben

Douglas Goff, her only child and heir at law. And after this his granddaughter, *Eleanor*, who had married one Coleman, died without issue, and the contest in this suit is whether on the death of Mrs.. Coleman her one-fifth interest in the land received from her grandfather, Jacob Hughes, descended to her two surviving sisters and her brother only, or whether Douglas Goff, the child of Julia Goff, takes an equal interest with his aunts and uncle. And this is to inquire whether his mother, Julia Goff, took such an interest over by way of contingent remainder, under testator's will, in the property given her sister Eleanor Coleman, as was, under the law, descendible to her child. The court below held in the affirmative, and gave to Douglas Goff one-fourth of his aunt's estate.

On this question, the earliest case in Kentucky is that of Birney v. Richardson and others, decided in 1837, and found in 5 Dana, 424. The opinion of the court was delivered by Judge Robertson. In that case, on a careful consideration and review of the authorities, citing some English cases, considering a clause in the testator's will, providing, after giving his estate to his wife for life or during widowhood, that on her marriage the estate should be divided equally between his five children, naming them, and then declaring "that (if) any or either of the above mentioned children should die without a lawful heir, begotten of their body, then his or her part of the estate to be equally divided among my *surviving children*," the court held that the children of two of these heirs who had died, took equal shares with two others who survived, of the portion given to the other sister, who had died childless. In that case the court referred to Roper on Legacies, page 426, and to Wilmot v. Wilmot, 8 Vesey, Jr., 10, and said, according to that and several other analogous

Graves, &c v. Spurr, Trustee.

cases, it would seem that when a bequest is made to the survivors of one of several children dying without issue, the testator should be understood to mean, by survivors, his *other children* unless they also had died without issue, because his presumed object was that all who should have issue should be entitled to an equal interest, and that nothing but death without issue should disturb that equality."

And the court further said: "We are, therefore, inclined to think that each of Mrs. Birney's sisters who died leaving issue, had, *when living, such an interest in these slaves* as was transmissible, though *prospective* and *contingent.*" The question was again before this court in 1870, in the case of Harris v. Berry, 7 Bush, 113, opinion also by Judge Robertson, and the same conclusion was reached. This was under the will of Benjamin Berry, who, after devising his estate equally to his fifteen children (all then living), said: "Should any of my children die before attaining lawful age, or without lawful issue, the portion of my estate bequeathed to them to be equally divided between the *survivors.*" Speaking of this will, the court said: "The leading purpose of the testator was to equalize his estate among his children and to secure it to his own descendants. This is manifest and needs no argument to prove it. Consequently, to confine the distribution of his estate to the *four surviving children* of the testator, and cut off the surviving representatives of his dead children, would seem to conflict with his own evident purpose of equality. The language of the provision quoted on that subject does not require such a restriction.

Survivors, as written, is a flexible term, not necessarily meaning the testator's surviving children only, but when molded by the context and spirit of the will, may consistently with the literal import comprehend all his surviving descendants who were intended to be beneficiaries.

Graves, &c v. Spurr, Trustee.

The court cites and approves the case of Birney v. Richardson, in 5 Dana, 429, and also the former authority cited in that case.

These are both strong cases in this, that in each the term survivor or surviving children has been so construed as to admit the issue of such children as had died in the meantime.

We have examined the case of Wilmot v. Wilmot cited. It fully sustains these two decisions, and speaks of the interest of each child as being a vested interest at the *death of the testator*, and so descendible. And that the child of a dead child took equally with a surviving brother or sister of the original devisee. This case was decided by the English courts in 1802.

We have examined the English case of Jones v. Roe, 3 Term Rep., 88, a noted case, and this fully accords with the cases before cited. Speaking of such interests as this, the court said: "They are devisable, because the person has an interest in the estate that is known to the law"

We have examined the case of Winslow v. Goodwin, a Massachusetts case, 7 Met., 363. This was a case fully considered, in which a great many English cases are quoted and commented on, and all to the same effect as these two early Kentucky cases.

In this Massachusetts case an English case of Chauncy v. Graydon &c., 2 Atk., 616, is cited, and Lord Hardwicke is quoted as saying: "Where either real or personal estate is given upon a contingency, and that contingency does not take effect in the lifetime of the first devisee, yet, if real, his heir, if personal, his executor, will be entitled to it."

This Massachusetts case is followed by a still later one,

Graves, &c v. Spurr, Trustee.

Cummings v. Stearns, 161 Mass., 506, decided in 1894, to the same effect.

In speaking of this case, Jones v. Roe, and of the first Massachusetts case cited, Mr. Redfield says: "Every contingent remainder and executory devise may be regarded, as so far of the nature of a vested interest as to be transmissible and devisable, provided, the contingency upon which the estate depends finally *turns up*, notwithstanding the testator (devisee) may have deceased before the estate becomes absolute in him."

Mr. Kent in vol 4, lecture 59, *262, says: "All contingent and executory interests are assignable in equity, and will be enforced, if made for a valuable consideration. And it is settled that all contingent estates of inheritance, as well as springing and executory uses and possibilities, coupled with an interest, *when the person to take is certain*, are transmissible by descent, and are devisable and assignable. If the person be not ascertained, then they are not possibilities coupled with an interest, and they can not be either devised or descend at the common law. Contingent and executory, as well as vested, interests pass to the real and personal representatives, according to the nature of the interest, and entitle the representative to them, when the contingency happens."

Again, the same author says: "Executory devises are not mere possibilities, but certain and substantial interests and estates, and are put under such restraints only as may prevent the mischiefs of perpetuities."

Mr. Fearne, p. 369, says: "In all cases where the *person to take is certain*, then these estates are descendible and devisable."

The difficulty occasionally met with in estates of this character is where both the person to take, as well as the

Graves, &c v. Spurr, Trustee.

contingency upon which he is to take, are uncertain. Then the courts say, that this is a mere possibility of which the law will not take notice, so as to make it descendible or devisable.

This uncertainty as to the person is usually held to arise when the estate is, after a life estate, given over to the survivors of a class of persons or of any given number of persons named, then the person who is finally to take upon the happening of the contingency is uncertain.

This trouble, however, does not arise in this case, as the limitation here is as to each grandchild that may die without issue, that then the interest given it shall go to his or her brother and sisters.

This will, like all other wills, speaks as of date of the death of the testator, and must be read and interpreted in the light of all the surrounding facts and circumstances, considering the estate in hand and the objects of the testator's bounty as well. So, that, when in this case the testator speaks of his five grandchildren of the Graves family, he comprehended and provided for all, giving to each a life estate, and carrying same over to the child or children of each, and in the event of the death of either without issue to his or her brother or sisters, considering them as they then lived, and vesting in each of them at that time the possibility of this estate or their respective interests in same, upon the death of either without issue. This was the only condition upon which it should pass away from either, and upon this condition happening it went to the others.

The testator does not say that in the event of the death of Eleanor Graves without issue then her interest shall descend to her brother and sisters, *provided, however,* that the issue of any grandchild who may have died shall

Graves, &c v. Spurr, Trustee.

not inherit an equal portion with the sisters and brother who shall survive.

This would have been in direct conflict with that purpose of exact equality that he contemplated between all his grandchildren and their descendants; and that the interest of neither should pass away nor be diverted from this general purpose of equality, except only in the event of some one dying without issue.

This was distinctly not a devise over, in the event of failure of issue in any one, to the *surviving* sisters and brother; this objectionable term is not used. Such a word as we have seen might and would, unless controlled by other expressions of the will, make the person who was to take uncertain.

In addition it may be safely said that every testator, in making his will, should be presumed to know the law of his domicile with reference to testamentary devises. And if so, that in this case the testator knew that the right of survivorship was unknown to the laws of Kentucky; that it had been long before repealed. And further, that he knew the law of descents as well, and that our statutes provided that "when a person having any right or title to any real estate of inheritance shall die intestate as to such estate, it shall descend in parcenary to his kindred, male and female, in the following order. . . . .

"First, to his children and their descendants." . . .

And again, turning to that chapter of our statutes construction, we find that the words "real estate," or "land," shall be construed to mean lands, tenements and hereditaments, and all rights thereto and interests therein, other than a chattel interest. So that when the testator, Hughes, provided that on the death of either of his grandchildren without issue, the interest given such grandchild should go

Graves, &c v. Spurr, Trustee.

to its brother and sisters, he did all that was necessary for him to do, knowing that in the event of the death of either leaving issue, his or her issue would take by inheritance, in the place of its father or mother, the same interest that they would have taken had they been living.

It only remains to notice briefly two cases relied upon by appellants. First, the case of Gorham v. Betts, 86 Ky., 164, where a testator, after creating a life estate, devised the remainder to his children, a family of three daughters. and two sons, in equal shares, and providing that in the event of the death of either of his daughters without issue, her interest should go to her sisters *only*. This expression the court construed to mean equivalent to *survivor* or *surviving sister*, and so excluded the child of a deceased sister. In that case it may be said that while both the English and American cases were cited by counsel, substantially the same as those now cited for appellee, they were not noticed or discussed by the court, no reference being made to the Kentucky cases.

The other case relied on by appellants is the case of Leppes v. Lee, 92 Ky., 16. No authority was cited by counsel for the devisee of a deceased brother, claiming his interest, except some statutory provisions, and while there may be some points of distinction in this case from those earlier cases in Kentucky before quoted, yet they were not quoted in the opinion, not considered and, of course, not overruled.

Therefore, we conclude that the interest that was given by the testator, Hughes, to his daughter Julia, to take an equal share with her brother and sisters, of the estate of any other sister or of her brother, dying without issue, was so far a vested interest in her as to be descendible, under the law, to her son Douglas Goff, and that he is entitled to

one-fourth interest in his aunt Eleanor Coleman's lands, given her by her grandfather, she having died without issue.

Judgment affirmed.