LANTZ ET AL. *v.* PENCE; JUDAY, EXECUTOR OF LAST WILL
AND TESTAMENT OF PENCE, DECEASED.

[No. 18,879. Filed May 20, 1957. Rehearing denied
June 26, 1957. Transfer denied September 26, 1957.]

James A. Simpson, of Goshen, for appellants.

Carl L. Chattin, of Goshen, for appellees.

CRUMPACKER, J.—The appellants were the plaintiffs below. Their suit is to quiet title to certain lands in Elkhart County, Indiana, against the adverse claim thereto of Fern J. Pence who died pending the litigation, whereupon L. G. Juday, both as executor of her will and as the sole beneficiary thereof, was substituted as party defendant. The decision of the court was against the appellants and the judgment is that they take nothing by their complaint. The case was tried upon the following agreed statement of facts:

"During his lifetime, one John A. Pence became the owner of certain real estate involved in this proceeding, together with other lands, in Elkhart County, Indiana. John A. Pence died testate on April 13, 1918, seized of this same real estate. He left a last will and testament disposing of said lands under Item 2 thereof which reads as follows:

"'Item 2. All of the residue of my estate, be the same personal property, real estate or mixed, I will, devise and bequeath as follows:

"'(a) Unto my beloved daughter, Pearl L. Darr, the undivided one half (½) of said residue in fee

simple. If, at my death my said daughter should not survive me, then I will, devise and bequeath the said One Half (½) of said residue of my estate to her child or children, share and share alike.

" '(b) The other one half (½) of the residue of my estate, I will, devise and bequeath to my son, Samuel O. Pence, he to have the rents, profits and income thereof during the period of time that he and his present wife, Fern Pence, shall sustain to each other the relationship of husband and wife, and thereafter, if my said son shall survive such relationship, then over to him in fee absolute; If, however, his wife, Fern Pence, should survive him sustaining to him the relationship of wife, then on his death I will, devise and bequeath said remaining one half of the said residue of my estate over in fee to my said daughter, Pearl L. Darr, and in the event of her death at said time, over in fee to her child or children, share and share alike.'

"Said will was duly admitted to probate in the Elkhart Circuit Court and on June 9, 1919, Pearl L. Darr, in consideration of a partition of their common interests, executed a deed to Samuel O. Pence conveying her interest in the land in controversy to him subject to the same conditions and provisions as attached to his inheritance under his father's will.

"Samuel O. Pence and his wife Fern were divorced on November 5, 1921, and on January 19, 1922, he brought an action in the Elkhart Circuit Court to quiet his title to the lands described in said partition deed which are the identical lands involved in this litigation, excepting a one and one-half (1½) acre tract of land out of the northeast corner of the lands described in this action, which had been conveyed to Samuel O. Pence by his father prior to his death, and is not involved in this litigation.

"He made his sister Pearl L. Darr, her husband Omer, and their two children, Velma and Vera Darr, defendants thereto. The said Velma and Vera were then unmarried but subsequently became Velma Lantz and Vera Myers, who are the appellants herein.

"The records of the Elkhart Circuit Court disclose that service was had on all defendants and

Pearl, Omer, and Vera Darr appeared generally and for answer disclaimed any right, title or interest in the real estate involved. Velma, being a minor, appeared by a guardian ad litem who filed answer demanding strict proof of each and every material allegation of the complaint.

"Said complaint was in general terms and merely alleged that the plaintiff, Samuel O. Pence, is the owner in fee simple of the lands described; that the defendants claim title to and an interest in said lands adverse to the plaintiff's rights, which claims are without right and unfounded.

"Upon these issues the court, on January 31, 1922, entered a decree declaring Samuel O. Pence to be the fee simple owner of said lands and quieting his title thereto against all claims of the defendants which were adjudged to be without right and unfounded.

"On March 6, 1922, Samuel O. Pence remarried his former wife Fern and lived with her continuously until his death on August 28, 1952, leaving Fern, his widow, as his sole and only heir at law.

"Pearl L. Darr preceded her brother Samuel in death on June 6, 1944.

"During his lifetime, Samuel O. Pence, with his wife Fern J. Pence joining, executed a conveyance to one Frank P. Bothwell, conveying the lands concerned and he, the said Frank P. Bothwell, immediately reconveyed the same lands to Samuel O. Pence and Fern J. Pence, husband and wife.

"On October 29, 1952, the appellants brought the present suit against Fern Pence, but before the suit could be brought to issue Fern died, leaving a last will and testament which was duly admitted to probate in the Elkhart Circuit Court. By said will she left all of her estate to a nephew L. G. Juday, who was also named executor thereof. On February 24, 1953, the nephew L. G. Juday was substituted as a party defendant in his representative capacity as Executor and in his individual capacity."

The appellants contend that these facts, as a matter of law, entitle them to have their title quited as prayed

for. That such relief was denied them and therefore the decision of the court is contrary to law. Their theory is that Item 2 (b) of the will of John A. Pence constituted an executory devise of the fee simple title to the real estate in controversy to them in the event Samuel O. Pence died leaving Fern J. Pence as his widow and providing further that their mother Pearl L. Darr was then dead. That said executory devise became operative on August 28, 1952, when Samuel O. Pence died then sustaining the relationship of a husband to Fern J. Pence who survived him as his widow and Pearl L. Darr having preceded him in death. They say that the judgment Samuel O. Pence obtained on January 31, 1922, quieting his title to the land here involved against all claims of these appellants and adjudging said claims to be without right and unfounded, is of no force and effect as a defense to this suit on the theory of *res adjudicata* because (1) a future interest in real estate created by an executory devise is indestructible except by the failure of the contingency upon which the estate of the first taker is limited; and (2) that their rights or interest in the real estate involved did not come into existence until August 28, 1952, when Samuel O. Pence died leaving Fern A. Pence as his widow. That was 30 years after Samuel O. Pence quieted his title to said real estate at which time they had no interest in or assertible claim against said property.

We think without doubt the law is with the appellants in their assertion that Item 2 (b) of the will of John A. Pence constituted an executory devise to them of the real estate in question. 2 Tiffany on Real Property, 3rd Ed., §360, pp. 110, 111. It is also settled law that a fee simple or lesser estate may be created so as to be defeasible and subject to executory limitation. *Corey, Executor,* v. *Springer et al.* (1894), 138 Ind. 506, 37 N. E. 322; *Watson* v.

*Tracy* (1921), 77 Ind. App. 163, 133 N. E. 411; 19 Am. Jur., Estates, §14, p. 472.

We further agree with appellants that it is the law in Indiana, and generally elsewhere, that no person can destroy an executory interest in another person, either by alienation, merger or surrender. *Abernathy* v. *Mc-Coy* (1930), 91 Ind. App. 574, 154 N. E. 682; *Jones* v. *Miller* (1850), 13 Ind. 337. The late Professor Gavit in his text on Future Interests, 1934 Ed., §90, p. 196, states the rule thus:

> "It seems clear that future interest other than contingent remainders can in no event be destroyed at the pleasure of the owners of prior interests. At common law, interest following a fee tail might be barred by the actions of fine or common recovery. Our statutes certainly abolish the fee tail, so that any interests limited upon it takes effect, if valid, as executory interests. They are thus indestructible."

It is conceivable, however, that the terms of the limitation, imposed by the will on the first taker's estate, are ambiguous and the testator's intention in respect thereto is difficult to determine within the four corners of the instrument; or a question may arise concerning the failure of the contingency upon which the future estate depends for fruition. Under such circumstances it must be conceded that any interested person may resort to the proper court to have his rights determined.

It seems clear to us that when Samuel O. Pence was divorced from his wife Fern on November 5, 1921, he concluded that, under the terms of his father's will, his estate in the real property in controversy became one in fee simple absolute. This position can be justified if said will is construed to mean that as long as he and Fern sustained the relationship of husband and wife he was to have only the

rents and profits of said real estate but in the event he survived such relationship, either through divorce or Fern's death, the property became his in fee simple absolute thus vesting in him an estate not subject to limitation by executory devise.

On the other hand Samuel O. Pence was faced with the possibilty that his father's will might be construed, as the appellants now urge, as evidencing an intention on the part of the testator to bar forever the possibilty of his son Samuel ever acquiring an interest in his property that he could pass along to Fern and if Samuel divorced and remarried Fern and died while so married the second time the executory limitation imposed by the will on Samuel's estate would become operative thus vesting in the appellants a fee simple title to the real estate to the exclusion of any interest Fern might otherwise have therein as, Samuel's widow.

Faced with this dilemma Samuel sought relief in the Elkhart Circuit Court through a suit to quiet title against his sister Pearl Darr and her daughters Velma and Vera and against the possibility of either of them asserting a claim in the future based on the executory devise contained in his father's will. It is true that his complaint merely alleged that he is the owner in fee simple of the lands described; that the defendants claim title to or an interest in said lands adverse to his rights; that the defendants' said claims are without right and unfounded. The answer of the minor defendant Velma through her guardian ad litem, demanded strict proof of all the allegations of the complaint and we must assume that such proof was made. That included proof that Samuel was the owner in fee simple of the real estate involved and that any claims the defendants might assert thereto are unfounded in law. As the rights of all the parties, either present or future, derive from the will of John A. Pence it is apparent

that the proof required of Samuel could not have been made without putting the construction of said will in issue and from its decision we are bound to assume the court concluded that Samuel's divorce from Fern foreclosed the possibilty of executory devise contained in said will ever becoming effective. Right or wrong such decision was not appealed from and still stands unimpeached.

This leaves for our consideration the question as to whether or not, in 1922, the appellants had any assertible claim in and to the property involved upon which a decree quieting Samuel's title thereto could operate. The appellants say not. They say up to the time of Samuel's death in 1952, leaving Fern his widow, they had nothing but a bare possibility of inheritance too gossamer in substance to constitute an assertible claim or interest. We have found no Indiana case directly decisive of this point but our neighboring state of Kentucky has said that executory devises are not mere possibilities but substantial interests. *Graves* v. *Spurr, Trustee* (1895), 97 Ky. 651, 31 S. W. 483. Michigan, our neighbor on the north, takes the view that an executory devise, being a possibility coupled with an interest, has the same incidents of descendibility, devisability and assignability as a contingent remainder. *In re: Coots' Estate* (1931), 253 Mich. 208, 234 N. W. 141. Thus we are constrained to hold that when Samuel sought to quiet his title in 1922 the appellants had, as disclosed by the probate records of Elkhart County, an apparently valid future interest in the property involved which was a cloud on Samuel's title if, in fact, the contingency upon which it was dependent had failed. Under such circumstances a suit to quiet title has been recognized as the proper remedy. 74 C. J. S., Quieting Title, §39. The appellants knew, in 1922, that Samuel's rights as well as their own were

predicated upon the terms of their grandfather's will and they could have taken then the position they take now that the executory limitation on Samuel's estate, prescribed by the terms of said will, had not failed because of his divorce from Fern as there was the possibility of his remarriage to her and his death while so married. We think it was the appellant's duty, when summoned into court, to urge upon the court a construction of their grandfather's will that would have protected the future interest they then had and which they now claim has come to fruition. This they failed to do but on the contrary they permitted the court to adjudge their claims to a possible title through the executory devise contained in said will, to be unfounded and without right.

It is agreed that the complaint by which Samuel instituted suit in 1922 alleged that he was the owner of real estate involved in fee simple and that appellants were claiming some title or interest therein adverse to his rights, which claims were unfounded and without right. Such complaint was sufficient to meet the requirements of §3-1401, Burns' 1946 Replacement, and it was then encumbent upon the appellants to set forth their claim to a valid future interest in said real estate which, under what they consider a proper construction of their grandfather's will, had not been determined by Samuel's divorce from Fern. Having failed to do so they are forever barred. *Green* v. *Scharman et al.* (1922), 78 Ind. App. 465, 135 N. E. 3.

Judgment affirmed.

Royse, J., dissents with opinion.

### CONCURRING OPINION

KELLEY, P. J.—In concurring in the majority holding in this case, it seems fitting that my reasons therefor

should be emphasized. The main opinion sets forth the agreed facts upon which the parties tried the cause and it is unnecessary to re-state them here.

Although this is the second appeal to us of this action, the prior decision, found in *Juday, Executor of Last Will and Testament of Pence, Deceased et al.* v. *Lantz et al.* (1954), 124 Ind. App. 552, 117 N. E. 2d 382, did not establish the law of the case since it went off on a ground not now before us and no opinion was therein expressed by us upon the precise question here involved. " . . . a decision is a precedent for the doctrine necessarily involved in it and not necessarily a precedent for the pronouncements of the judge or judges who wrote it. . . . it is proper to ascertain the exact point or points before the court for adjudication and seek, in the opinion, the doctrine announced or followed by the court . . . All else in the opinion is merely the reasoning or explanation of the court and attains the dignity of neither doctrine nor precedent." *Hahn, Traeger* v. *Moore* (1956), 127 Ind. App. 149, 134 N. E. 2d 705, 706 (Transfer denied). The doctrine adhered to in the aforesaid *Juday, etc.* v. *Lantz et al., supra,* and one of the grounds upon which a reversal was predicated, was simply that evidence tending to show fraud in the procurement of the judgment of the Elkhart Circuit Court on January 31, 1922 was erroneously admitted by the court because there was no special plea of fraud and such evidence constituted a collateral attack on the judgment of January 31, 1922. No opinion was there expressed, either directly or by implication, upon the contentions now advanced by appellants in the pending appeal. It follows that consideration of the present matter may be pursued freely and unharried by the ghost of prior announcements.

It is well in all things to begin in the beginning. Doing so, we find, by the agreed facts, that John A.

Pence was the owner of the real estate here involved. He made a will, effective at his death in 1918, devising one-half of the land to his daughter, Pearl, and the other half to his son, Samuel, with the stated provisions which have been the source of the controversy resulting in the exposed litigation. Other than to mention it, Pearl's partition deed to Samuel is without consequence here.

At this point it seems appropriate to call attention th the fact that, upon the record before us, whatever title Samuel acquired to the real estate and which he held on January 19, 1922, he acquired by virtue of and through the said will of his father. No other source of title in him is shown. The same may be said of his sister, Pearl. Samuel and his wife, Fern, were divorced and thereafter on January 19, 1922 Samuel brought his action to quiet his title to the real estate, joining, as defendants, his sister and her husband and their two children, the latter being the appellants in this appeal. The complaint asserted that Samuel was the owner of the real estate in fee simple and that the said defendants claim title to and "an interest" in the land, which claims were without right and "unfounded."

Now at the time Samuel brought his action to quiet his title, a Declaratory Judgment Act had not been enacted in this State and a quiet title proceeding was then the usual and most appropriate method resorted to for obtaining judicial construction of instruments, wills, and other sources of title as a basis for determining the validity or invalidity of an asserted legal title. Such was the remedy apparently pursued by Samuel for the determination of the validity and tenure of his asserted title. The aforesaid defendants were served, appeared to the action, and pleaded the adults, Pearl, her husband, and her daughter, Vera, disclaimed any "right" or "interest" in the land. The minor, Velma,

appeared by guardian *ad litem* and filed answer demanding strict proof of the material allegations of the complaint. It must be assumed, of course, that the court properly performed its judicial duty and required "strict proof" of the complaint allegations. In order to make strict proof of the basis and source of his title, Samuel was required to put in evidence the will of his father. In the absence of any showing to the contra, we must also assume, in favor of the decree, that the will was put in evidence and submitted to the court for construction thereof. This must be so for the will, insofar as is disclosed by the present record, was the only evidence of the source of Samuel's asserted title in fee simple.

It cannot now be assumed, upon the record before us, in dispute of the judgment rendered therein, either that the defendants to said quiet title proceeding were not apprised of their rights and interests under said will or that they were not obliged to tender and assert any present or potential rights or interest in and to the real estate which they may have had or which was revealed by the provisions of the will. And it certainly must be assumed that the answer of the guardian demanding strict proof put in issue all the rights and interests in the land of the minor child under whatever construction the court then placed upon the will. Thus it is apparent that the court was not relieved of the duty of construing said will even though disclaimers were filed by the other three defendants. "A complaint to quiet title challenges the defendants to *present their claims,* and directly gives them an opportunity to assert their interest or title, and if they fail to do so they are concluded. This doctrine is as old as this court—indeed, it is much older. (Our emphasis). *Davis* v. *Lennen* (1890), 125 Ind. 185, 188, 24 N. E. 885. As against one claiming an estate in fee, an assertion of a

future or contingent interest is sufficient to constitute an adverse claim. 74 C. J. S., Quieting Title, page 63, §39.

It is now suggested that at the time the court entered its decree, on January 31, 1922, adjudging all claims of said defendants to be without right and unfounded and declaring Samuel to be the fee simple owner of the land and quieting his title thereto, the said defendants, including Pearl and her two children, appellants here, had no ascertainable title under the will to the real estate. But it seems to me that we are now in position to make such determination. It appears more logical to me and more in accord with the consistent legal principles established by our courts safeguarding and stabilizing titles to real estate, to recognize that the Elkhart Circuit Court, in the said 1922 quiet title action, was required to and did construe the will and determined therefrom that the claims of the defendants were unfounded and that Samuel O. Pence was the fee simple owner of the land. Whether such construction was, as may be now thought, right or wrong is of no moment. The court had jurisdiction of the parties, the will was construed by a court of competent jurisdiction, the rights of the parties were determined, a final decree was entered, and there was no appeal therefrom. All the parties thereto were concluded: "It matters not how many or how great the errors of the court in the course of the suit, the decree is not void, and if not void no collateral attack can be availing." *Davis* v. *Lennen, supra.*

The beneficiaries under the will, all of whom were made parties to the quiet title action, may not have then possessed an ascertainable "title" but most certainly the will disclosed the possibility of an "interest" in the land and it was for the court in the quiet title action in 1922, under the issue raised by the answer of the guard-

ian *ad litem,* to determine what that possibility was and the nature and kind of any interest the defendants may have had under the will. In fact, executory interests are not mere possibilities but are certain interests and estates, sometimes referred to as possibilities coupled with an interest. 31 C. J. S., Estates, page 136, §122 a. The court, of necessity, must have found that they possessed no interest or possibility coupled with an interest for it concluded that "all" claims of the defendants were "unfounded" and quieted the title in Samuel as a fee simple title. "If she (in this case he) was, in fact, the sole owner in fee, the defendants could not possibly have any title whatever, for the existence of a fee simple is always and absolutely exclusive." *Davis* v. *Lennen, supra.*

Further, in my opinion, the court, in the quiet title action of 1922, in order to arrive at the conclusion it expressed, must have interpreted the will as providing that if Samuel survived the relationship of husband and wife existing between Samuel O. Pence and his wife, Fern, *at the time of the testator's death,* the fee simple title, under the wording of the will, would vest in Samuel absolutely. In such event, the executory devise, if such it be, was not destroyed; it never came into being, for the contingency upon which it was predicated was rendered impossible of occurrence by Samuel's survival of the then existing relationship of husband of Fern. The fee title having vested in Samuel absolutely, under the terms, provisions and conditions expressed in the will, was properly so confirmed by the court. While the court did not employ the word "absolute" in its decree, such, nevertheless, was the true tenure of title held by Samuel, for he held the title given him by virtue of the will and not by virtue of the confirmation of his title by the court decree. If, by reason of the circumstances, Samuel took a fee simple title

under the will, then he took a fee simple absolute, for that is what the will provided and that was the devise made to Samuel. The fact that Samuel thereafter remarried his former wife could not, in my opinion, resurrect and re-establish the already foreclosed contingency of the will, for the husband and wife relationship *which existed between Samuel and Fern at the time of decedent's death* was survived by Samuel and that is the only relationship which, by the terms of the will, Samuel was to survive in order to acquire the absolute fee simple title to the land. And I think that is the construction the court confirmed by its decree quieting Samuel's title and holding the defendants' claims unfounded. It may be well noted here, also, that by the will the original or first devise to Samuel amounted only to a term or limited estate in the rents, profits and income of the land leaving the fee in suspension and unvested until one of two alternate contingencies should occur. The first alternate contingency was that if Samuel survived the then existing relation of husband to his wife, Fern, the fee would then vest in Samuel, absolutely. Said first provided contingency was the one which first came to pass, and thereupon a fee simple absolute vested in Samuel. In my opinion the second contingency, upon the happening of the first contingency, became void for it was then in derogation of and repugnant to the fee simple absolute title held by Samuel. See 31 C. J. S., Estates, page 137, §122,b. (2) (a).

Whether we would now so construe the will, if we were entertaining the quiet title action of Samuel at this date, is of no consequence. If it were otherwise, there would be no stability of real estate titles and the purchase and alienation thereof would be a hazardous venture, to say nothing of the effect upon the com-

mercial world in attempting to utilize real estate as security for loans and advancements.

A judgment in an action to quiet title is final and conclusive not only as to all issues actually involved and determined but also as to such matters as should have been litigated and determined. 50 C. J. S., Judgments, page 241, §738. "The statute providing for an action to quiet title was intended to secure repose and to settle in one comprehensive action all conflicting claims; and a decree in an action to quiet title, . . . cuts off all claims of the unsuccessful party *which are not saved by the decree."* (Our emphasis). *Central Federal Savings & Loan Association* v. *Cummings et al.* (1940), 216 Ind. 636, 639, point 2, 25 N. E. 2d 638. "All persons who were made parties to the action or are in privity with such persons and who failed to appeal or take other proper steps to vacate the judgment, are bound by that finding. No matter how erroneous the finding and the judgment of the court based thereon may have been, such finding and judgment can not be attacked in a collateral proceeding by one who was a party to said judgment or by one in privity with such a party." *Grantham Realty Corporation* v. *Bowers, Jr., Trustee et al.* (1939), 215 Ind. 672, 679, 22 N. E. 2d 832.

Unless we are now ready to abrogate and renounce the long list of cases, extending back to the very first of our judicial expressions, holding that in an action to quiet title, all matters affecting the title of the parties may be determined, that the decree effectually adjudicates all claims to an interest in the land, whatever their form or character, existing at the time the decree is rendered, and that the judgment is conclusive on the parties, *(The Indiana Bloomington and Western Railway Company* v. *Allen* (1887), 113 Ind. 308, 15 N. E. 451), it seems to me that we must conclude that the decree of the Elkhart Circuit Court, rendered January

31, 1922, is decisive of this action and that the judgment appealed from in this cause must be affirmed.

## DISSENTING OPINION

ROYSE, J.—This is the second appeal in this case. In the case of *Juday, Executor of Last Will and Testament of Pence, Deceased et al* v. *Lantz et al* (1954), 124 Ind. App. 552, 117 N. E. 2d 382, (appellant's petition to transfer to the Supreme Court was dismissed because it was filed too late). In that case the appellees here were the appellants and the appellants here were the appellees. The author of the majority opinion there is the author of the majority opinion in this case. In that case I wrote a dissenting opinion and for the reasons hereinafter stated feel that I must again dissent. In that case, at pages 556, 557, the majority correctly pointed out that:

"Although the appellees filed no pleading asserting fraud in the procurement of the judgment of January 31, 1922, the court permitted them to introduce evidence, over pertinent objections, having no probative value other than to impeach said judgment for fraud in its procurement and for which purpose it was obviously offered. This was error in two particulars. First, where fraud furnishes the ground for any type of relief it must be set up by special plea alleging facts constituting fraud before evidence tending to prove the ultimate fact will be admitted. . . . Second, it constituted a collateral attack on the judgment of January 31, 1922. Where the invalidity of a prior judgment is sought to be shown in a subsequent suit by matter extraneous to the record, such attack is collateral and cannot be made by a party to the former record. . . . There seems to be an exception to this rule where the second suit is for the express purpose of vacating or voiding the prior judgment for fraud in its procurement. Such a suit is regarded as a direct attack even though prosecuted by a party to the former record and such record shows

no infirmities on its face. . . . It is obvious that the present case does not fall within this exception."

The majority opinion then stated:

"The appellees made two defenses below against the judgment of January 31, 1922, as a bar to this action. First, they say that, as the beneficiaries of an executory devise, they acquired absolutely no assertable interest in the land involved in said quiet title suit of 1922 until Samuel O. Pence died and then only in the event Fern Pence survived him as his widow and in the further event that their mother Pearl Darr was then dead. That these contingencies occurred long after the judgment upon which the appellants rely and necessarily such judgment is no bar to the assertion of rights subsequently acquired. Second, they say said judgment was procured by fraud and therefore void and of no binding effect on anyone. In the absence of special findings, we cannot say which of these contentions prompted the court's decision *and as evidence in support of the fraud issue was wholly improper and its admission erroneous we must assume that the error was harmful.*" (My emphasis.)

In my opinion the majority opinion there stated the law of this case and, right or wrong, established the rule that must govern this case. *Daugherty et al.* v. *Daugherty et al.* (1949), 119 Ind. App. 180, 83 N. E. 2d 902 (Transfer denied). I interpret that opinion as holding if the erroneous evidence had not been admitted over proper objection the decision of the trial court would be affirmed. Therefore, in this case the facts being stipulated, as stated in the majority opinion, and being substantially the same as in the first case, it seems to me the judgment of the trial court should be reversed.

However, if the rule of the law of the case is not applicable here, I believe that on the record herein the judgment should be reversed.

In my dissent in the first case, at page 559, I said:

"It is a fundamental rule in the construction of wills that it is the duty of courts to effectuate the intent of the testator as such intention is gathered from the four corners of the will.

"It is my opinion the above quoted provision (Item 2, subd. b) in clear, positive, unambiguous language expresses the intent of the testator that if Fern Pence survived Sam while she was his wife, this property was to go first to Sam's sister and if she had died, then to the appellees herein. In other words this was an executory devise."

In support of this statement I cited Gavit, Blackstone's Commentaries on the law (1941 Ed.), pp. 322, 323; 4, Thompson on Real Property, p. 813, Sec. 2266; *Abernathy* v. *McCoy et al., etc.* (1926), 91 Ind. App. 574, 598, 599 (transfer denied 1930), 154 N. E. 682; *Jones and Another* v. *Miller and Another* (1859), 13 Ind. 337; Section §56-138, Burns' 1951 Replacement; Gavit, Future Interests, Wills and Descent, (1934) Edition, Sec. 58, p. 122.

The majority opinion now recognizes the foregoing principle of law set forth in my dissent and, as will be noted, cited several of the authorities relied on therein. Their opinion now for the first time, by what I deem tenuous reasoning, raises the bogey straw man of "ambiguity" to sustain their conclusion.

In my opinion the construction of this provision is controlled by the meaning of the word "survive." In Webster's New International Dictionary (Second Edition) it is defined:

SURVIVE—"To remain alive or existent; to live on; to continue to exist; to live beyond the life or existence of; to live longer than; *to outlive;* outlast the end of; as, to *survive* a person, a disaster, or one's period of usefulness.

Syn.—Outlive."

In Oxford Dictionary (Third Edition "The Concise")—

SURVIVE—"Outlive, be still alive or in existence after the passing away of, come alive through or continue to exist in spite of, (s. one's children, contemporaries, &c.; s. one's usefulness; s. all perils) ; continue to live or exist, be still alive or existent. Hence SURVIVOR, SURVIVORSHIP (esp. right of joint tenant to whole estate on other's death.)"

In Black's Law Dictionary, (Third Edition)—

SURVIVE—"To continue to live or exist beyond the life, or existence of; to continue to live or exist beyond (a specified period or event) ; to live through in spite of; live on after passing through; to remain alive; exist in force or operation beyond any period specified."

It is an elemental rule that in construing provisions of this kind, courts will give to ordinary words their usual and generally recognized meaning. In my opinion this provision of testator's will clearly, definitely and without ambiguity stated his intention that in the event Fern Pence was the wife of Samuel Pence when he died, this real estate would go to his heirs named therein. When he died she was his wife. Therefore, as stated at page 562 of my dissent in the original case:

"When the judgment of 1922 was rendered the likelihood that the contingencies would happen by which they could acquire title to this property was thinner than the hair that held the sword over Damocles. As heretofore indicated, Fern was not then the wife of Sam and Pearl Darr was alive. Hence, appellees at that time had no ascertainable title in this property. Under the authorities cited herein that judgment could not divest them of the title they subsequently acquired through the happenings of the contingencies which the testator had imposed."

I adhere to that statement.

Finally, I wish to call attention to a late case from our Supreme Court on this question. In *Rouse et al.* v. *Paidrick et al.* (1943), 221 Ind. 517, 49 N. E. (2d) 528, Dan Paidrick and his wife conveyed to their son Lewis Paidrick certain real estate reserving to themselves a life estate in said property. It was further provided that Lewis Paidrick would hold said land after the death of grantor during his natural life and at his death the land would go to his children then living and to the descendants of those that may have died. In the event Lewis died and did not leave surviving him any child or descendants of a child, the land would go to his brothers and sisters; that if Lewis died before the grantor the land would revert to them. Some three years later Lewis conveyed this real estate by warranty deed back to his father. The father, several years later, conveyed to Rouse who occupied the land under claim of ownership from 1883 to 1932. Lewis subsequently married and had three children. Two of them and the descendants of the third brought this action to quiet their title. Judgment for the children. In affirming that judgment, the Supreme Court, speaking through Judge Richman, said, at page 524:

> "By his deed to his father Lewis conveyed only the life estate which he had and appellants' predecessor by his purchase from Daniel acquired only the life estate of Lewis and that reserved by Daniel. Lewis lived a long time and during that time appellants evidently thought they owned the fee. These facts do not enlarge the estate held by them which ceased with his death."

I believe the judgment should be reversed with directions to the trial court to quiet appellant's title to this real estate.

NOTE.—Reported in 142 N. E. 2d 456.