ERIE-HAVEN, INC., HEFNER CHEVROLET, INC. *v.* THE FIRST CHURCH OF CHRIST, SCIENTIST, IN BOSTON, MASSACHUSETTS, MAX HIMELSTEIN AND ROSE HIMELSTEIN, HUSBAND AND WIFE, THE HAUSMAN STEEL CO., THE PRINCIPIA CORPORATION, AND THE NEW YORK CENTRAL RAILROAD COMPANY.

[No. 3-672A24. Filed February 21, 1973. Rehearing denied March 27, 1973. Transfer denied July 31, 1973.]

*Shoaff, Keegan, Baird & Simon, Thomas M. Shoaff,* of Fort Wayne, for appellant.

*John H. Krueckeberg, Parry, Krueckeberg & Duemling,* of Fort Wayne, for appellees The First Church of Christ Scientist, *James R. Grossman, Gary M. Cappelli, Grossman & Schogham,* of Fort Wayne, for appellees Himelstein and The Hausman Steel Co.

SHARP, J.—This action was initiated by Appellants Erie-Haven, Inc. (Erie-Haven) and Hefner Chevrolet, Inc. (Hefner) filing a complaint for a Declaratory Judgment to determine the rights of the parties with respect to an easement which was created by written contract between the parties' predecessors in interest.

The issues were ultimately fixed by a Second Amended Complaint and the answers filed in response thereto. After a series of interrogatories, both parties filed Motions for Summary Judgment with attached affidavits and exhibits. The

parties also filed a stipulation as to certain facts concerning the question of whether the easement had terminated as a matter of law.

The trial court, after hearing oral argument on the respective motions, granted the Appellees' Motion for Summary Judgment and denied Appellants' Motion.

Appellants' Motion to Correct Errors, which was overruled by the trial court, presents the following issues for review:

(1) Whether the provisions of the contact as applied to the facts resulted in a termination of the easement as a matter of law.

(2) Whether the trial court erroneously applied the doctrine of equitable estoppel.

(3) Whether there existed genuine issues as to material facts so as to preclude the use of summary judgment as a means of disposing of the controversy.

A review of the facts contained in the record reveals that Erie-Haven and Hefner now have an interest in a tract of land adjacent to one now owned by the Himelsteins and leased to Hausman Steel Co. (Hausman). In 1949, Erie-Haven's predecessor in interest entered into a written contract with Himelsteins' predecessor in interest whereby Erie Haven's predecessor, as grantor, granted an easement across the Erie-Haven tract (subservient tract) for the use of a railroad spur track to the immediately adjacent property of the Himelsteins (the dominant tract).

The relevant provisions of said easement agreement appear in paragraphs six and eight, respectively, as follows:

"It is further agreed by and between the parties hereto that there shall be established and is hereby established, a permanent easement, which shall run with the land, for the use, operation and maintenance of said railroad switch track across the said Tract B (Grantor's subservient land); that the Party of the First Part (Grantee) shall have the right and privilege of using the said railroad switch line for the purpose of moving railroad cars from the said New York Central Railroad line to and onto the said Tract A

(Grantee's dominant land) and that this right and easement to so use said line also be perpetual; that the Party of the Second Part shall have the right and privilege of spotting and unloading railroad cars on that part of the said railroad switch track which shall be located on the said Tract B (Grantor's subservient land), but such use shall be reasonable and shall not interfere with the reasonable use of such switch track by Party of the First Part as aforesaid.

\* \* \* \*

It is further agreed by and between the parties hereto that if any business maintained on the said Tract A (the dominant property) shall be abandoned and completely discontinued to the extent that the said railroad switch tracks are no longer being used in connection with the said Tract A, then and in that case, the said rights, privileges and easements as set out in this Agreement shall become void and the said railroad switch track shall become the sole property of Party of the Second Part (Grantors)."

The Canfield Lumber Co., Himelsteins' remote predecessor and grantee of the easement, continued on the dominant tract from the time of the agreement until July of 1961, at which time it removed its business from the dominant property and ceased all operations thereon.

Following the vacation of the dominant property, the said property passed by Will to Appellees, First Church of Christ, Scientist, and the Principia Corporation, who thereafter listed the property for sale. From the date of the listing until the sale of the dominant tract in 1964, the property was vacant, but never lost its commercial character.

In 1964, the First Church of Christ, Scientist, sold the dominant tract to the Himelsteins, who shortly thereafter leased a portion of said tract to Hausman. Hausman occupied the property in the spring of 1964 and began to use the spur track sometime later.

Prior to entering into the lease with the Himelsteins, a representative of Hausman talked with a member of the Board of Directors of Erie-Haven, who tried to interest Hausman in leasing the Erie-Haven tract. Hausman explained that the Erie-Haven tract was not sufficient for the intended uses of

Hausman. Also, Hausman commenced the construction of improvements on its leased tract and purchased cement from Erie-Haven in conjunction with said construction. Finally, the President of Erie-Haven visited the dominant tract while the construction of the improvements was under way.

In January, 1965, Hefner secured a leasehold interest in the subservient tract owned by Erie-Haven and within three months of the acquisition of such interest notified the respective Appellees of its intent to fence off the easement.

## I

The first issue concerns the proper construction to be given the various provisions of the contract which created the easement. The Appellants, Erie-Haven and Hefner, maintain that all the conditions necessary for the cessation of the easement were fulfilled. They contend that when the Canfield Lumber Co. vacated the dominant tract so that the land lay idle for three years, the railroad switch tracks were no longer being actively used in connection with said dominant tract. Therefore, the easement became void and the property over which the easement ran became the sole property of the owners of the subservient tract.

The Appellees, with whom the trial court agreed, argued that it is only when the grantee's dominant property is no longer being used for any business purposes, coupled with a complete abandonment and complete discontinuation of the use of the switch tracks, that the grantor or its successors would have a right to terminate the easement. Under this interpretation, the termination is not contingent upon the abandonment and discontinuation of any viable business activity on the dominant tract, but rather such termination is predicated upon the tract assuming an economic character such that the continued use of the switch track in connection therewith is no longer feasible. As long as the switch tracks remain a valuable asset to the dominent tract, regardless of whether they are in active use, the easement continues to exist.

Both parties have cited the standard rules of contract interpretation in aid of their respective positions. We have been referred to the rules which provide that a court should give effect to all the parts of an instrument, and a construction of the instrument which renders a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable. The trial court made use of the above rules and in its first memorandum opinion stated:

> "Plaintiffs' contention is well founded if the words of limitation are read apart from the whole of the contract. However, Plaintiffs' interpretation is inconsistent with the parties' express provision that the easement be permanent, perpetual and run with the land. If the easement was intended, as expressly provided, to be perpetual, then interim periods of non use during transfers of ownership were contemplated within the agreement. Indeed, the parties manifested their intent that the easement not be merely personal to the Canfield business entity when they used the phrase '. . . any business maintained on the said Tract A . . .'. Interpreting the words of limitation in the preferred manner, as to be consistent with the whole of the contract, the easement would become void only when the tract assumed a character which would make the existence of the switch track unnesessary."

Thus, the trial court agreed with the interpretation of Appellants but for the fact that the easement was to be perpetual. If the trial court's initial premise is correct (i.e., that termination is inconsistent with a perpetual easement), then it would logically seem to follow that the trial court's own interpretation is likewise inconsistent since it also provides for termination based on a different contingency. It should be pointed out, however, that a forfeiture or termination provision in an easement agreement is not necessarily repugnant to a perpetual grant of said easement.

The nature, extent and duration of an easement created by an express agreement or grant must be determined by the

provisions of the instrument creating the easement. *Spencer Stone Co.* v. *Sedwick* (1914), 58 Ind. App. 64, 105 N.E. 525. An easement is an interest in land and may be held in fee. *Shirley* v. *Crabb* (1894), 138 Ind. 200, 37 N.E. 130. A fee simple or lesser estate in land may be created so as to be defeasible. *Lantz* v. *Pence* (1957), 127 Ind. App. 620, 142 N.E.2d 456. While an easement is normally held in fee, it is well established that an easement, like any other estate in land, may be held as a determinable fee. *Irvin* v. *Petitfils* (1941), 44 Cal. App. 2d 496, 112 P. 2d 688. Annot, 154 A.L.R. 5 (1954). An easement which is held as a determinable fee will terminate upon the happening of the event upon which its existence is conditioned without any action by the grantor of the estate or his successors in interest. Annot, 154 A.L.R. 5 (1954) ; 28 Am. Jur. 2d, § 24, p. 101 (1966).

Although the initial language of the contract in the instant case would seem to create an easement in fee, the subsequent language clearly shows an intent to make the fee determinable upon the happening of certain conditions. In *Fall Creek School Tp.* v. *Shuman* (1913), 55 Ind. App. 232, 103 N.E. 677, the court recognized that an initial grant of a fee simple would not override subsequent provisions which clearly indicated that the grant was to be a determinable fee. The court concluded that:

> "The word 'forever' would seem to indicate that the Grantor intended that the property should vest in fee simple in Fall Creek Township, and if that be the correct view, it would completely nullify the language in the last clause. It is a well settled rule, however, that the deed must be construed as a whole, and the Grantor's intention must control. In 2 Devlin, Deeds (3rd ed.) § 844(a) this language is found: 'If possible, some effect must be given to every word in a deed and it must be harmonized with the other language of the conveyance. The modern rule is that the Grantor's intention should control. In construing the instrument, it is to be taken as a whole, and the plain intent of the Grantor will prevail over technical words of legal signification."

We hold that the contract created a determinable easement which would terminate automatically upon the happening of the contingency specified in the contract.

Having determined that the easement created by the contract was determinable, we further hold that the words of limitation require that said easement terminate upon the cessation of any business activity on the dominant tract to the extent that the switch tracks were no longer being actively used in conjunction with said tract. The phrase "abandoned and completely discontinued" does not refer to the land, but rather to the business activity integral to the switch tracks. Thus, even the initial grantee, Canfield Lumber Co., could have caused the termination of the easement by the simple expedient of failing to use the switch tracks in conjunction with its business activity on the dominant tract. While the switch track might have theoretical economic value to the dominant tract, it would no longer be used in connection therewith. It is to be noted that the trial court seemed to agree with the above interpretation but for the perpetual grant of the easement initially.

Appellees argue that "abandonment" is a word of art and must be construed in a restrictive manner. However, the cases cited by Appellees deal exclusively with situations where there was no express agreement. The question was always whether the owner, absent an express agreement, abandoned the property. Such is not the case here. We are not concerned with the physical abandonment of real estate but with the abandonment and cessation of business activity to the extent that the switch tracks are no longer being used in connection with the dominant tract. For three years there was no business activity on the dominant tract. It follows that for said period of time, the switch track was not being used in connection with the dominant tract. We therefore hold that the easement terminated pursuant to the terms of the contract.

## II

The last two issues of whether summary judgment was appropriate and if so, whether the trial court erred in its application will be combined for purposes of this opinion. The facts concerning the termination of the easement were stipulated and the issue involved was purely a question of law for which summary judgment was appropriate.

Our construction of the terms of the contract does not end the controversy for the trial court, in an alternative holding, found that the Appellants were estopped to assert the termination of the easement. The Appellees affirmatively raised the defenses of equitable estoppel, waiver and laches by their answers to Appellants' complaint.

In *Voorhees-Jontz Lumber Co.* v. *Bezek* (1965), 137 Ind. App. 382, 397, 209 N.E.2d 380, the court stated:

> "The elements that must exist to constitute equitable estoppel are found in *Midland Building Industries* v. *Oldenkamp*, *supra*, at p. 353, quoting from 31 C.J.S., Estoppel, § 67, p. 254:
>
> > 'In order to constitute an equitable estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.' Also see Richardson v. St. Mary's Hospital, Inc. (1963), 135 Ind. App. 1, 191 N.E. 2d 337, 340."

Our Supreme Court in *Phar-Crest Land Corp.* v. *Therber* (1969), 251 Ind. 674, 244 N.E.2d 644, reaffirmed a quotation from *Pitcher* v. *Dove* (1884), 99 Ind. 175, which stated:

> ". . . . It is well settled that there need not be any design to defraud in order to constitute an estoppel. It is sufficient if the conduct of the party has been knowingly such as would make it unconscionable on his part to deny what his

conduct had induced another to believe and act upon in good faith and without knowledge of the facts."

Equitable estoppel may arise from silence as well as from positive conduct. For silence to give rise to equitable estoppel, there must not only be an opportunity to speak, but an imperative duty to do so. *French* v. *National Refining Co.* (1939), 217 Ind. 121, 26 N.E.2d 47. Indiana follows the general rule "that silence and acquiescence, when good faith requires a person to speak or act, are, in the matter of estoppel, equivalent to express affirmation. *Bahar et al.* v. *Tadros, etc., et al.* (1953), 123 Ind. App. 570, 584, 112 N.E.2d 745; *Chadwick* v. *Miller et al.* (1955), 126 Ind. App. 325, 133 N.E.2d 67.

In *Henning* v. *Neisz* (1971), 148 Ind. App. 576, 268 N.E.2d 310, 316, this court said:

> "Acquiescence '* * * is a release or an abandonment of one's rights if, having rights, he stands by and sees another dealing with his property, in a manner inconsistent with such rights, and makes no objection while the act is in progress." *Board of Commissioners of Cass County* v. *Plotner* (1897), 149 Ind. 116, page 121, 48 N.E. 635; *Duke of Leeds* v. *Earl of Amherst,* 2 Phil. Ch. 117.

Although the basic facts concerning the events subsequent to the vacation of the dominant track by Canfield Lumber Co. are not in dispute, the parties draw vastly divergent inferences from said facts. With regard to conflicting inferences, this court in *Watson* v. *Tempco Transportation, Inc.* (1972), 151 Ind. App. 644, 281 N.E.2d 131, 134, stated:

> "However, in the instant case, while the basic facts do not appear to be in dispute, there nonetheless is genuine disagreement between the parties as to the inferences to be drawn from those facts. It is well settled in the federal courts that where there exists a good faith disagreement as to the inferences to be drawn from the facts summary judgment is not proper. *Hart* v. *Johnston,* (6th Cir. 1968), 389 F. 2d 239; *Massengale* v. *Transitron Electronic Corp.* (1st Cir. 1967), 385 F. 2d 83; *Williams* v. *Pacific Maritime*

*Association* (9th Cir. 1967), 384 F. 2d 935; *Moran* v. *Bench* (1st Cir. 1965), 353 F. 2d 193.

The federal rule was followed by this Court in *Wozniczka* v. *McKean, et al.* (1969), 144 Ind. App. 471, 247 N.E.2d 215:

'A case is not one to be decided on summary judgment where, though the basic facts are not disputed, parties in good faith may nevertheless disagree about inferences to be drawn from the facts.' "

There also appears to be a question as to whether certain Appellants had knowledge of the improvements being made by Hausman.

Because of the question of the knowledge of Appellants and further because of the disagreement on inferences to be drawn from the facts, summary judgment was not proper.

This case is therefore reversed and remanded to the trial court for a determination of the remaining issues on the merits.

Reversed and remanded.

Hoffman, C.J. and Staton, J., concur.