GTA, a Partnership comprised of Robert J. Prentice and Wilson E. Prentice and Robert J. Prentice and Wilson E. Prentice, Individually *v.* Shell Oil Company.

[No. 1-676A93. Filed January 10, 1977.]

*Ronald R. Fifer, Stephen W. Voelker, Fifer, Vogt & Lanum,* of Jeffersonville, *E. Clay Ulen, Jr., Robert J. Bremer, Baker & Daniels,* of Indianapolis, for appellants.

*G. William Blackburn, Jr., Stallings & Stallings,* of Louisville, Kentucky, *Maurice H. McDaniel,* of New Albany, for appellee.

Robertson, C.J.—Plaintiffs-appellants, GTA, a partnership, (hereinafter GTA), appeal from a negative judgment of the trial court, which refused to find that the determinable

easement granted to defendant-appellee, Shell Oil Company (Shell), had terminated and reverted to GTA.[1]

The facts necessary for our disposition of this appeal are as follows: On January 4, 1967, GTA leased to Shell Oil Company, for an initial term of fifteen years, a lot along the northerly boundary of State Road 131 which was bounded on the east by a shopping center owned by GTA, known as Green Tree Mall. On February 27, 1967, GTA and Shell Oil Company executed an instrument entitled "Agreement Amending Lease", which in pertinent part reads:

> "3. So long as the [leasehold] premises are used as an automobile service station, Shell shall have two drive entrances per Shell's plans and specifications to provide ingress and egress to and from leased premises and the westerly entrance to Green Tree Mall Shopping Center."

Subsequent to January 18, 1969, when Shell completed its construction of the service station on the leasehold, Shell actively used said premises exclusively for automobile service station purposes. On April 4, 1973, Shell temporarily closed the station, and, for a time thereafter, reopening was made impractical due to a gasoline shortage. However, the station was reopened by Shell approximately a year and a half later.

From November 1973 through March 1974, Shell and River City Restaurants, Inc., a subsidiary of Ollie's Trolley, Inc., negotiated for the construction and operation of a fast-food restaurant on the leasehold. Before negotiations were completed, representatives of Ollie's Trolley removed the gasoline islands and pumps on the east side of the station and replaced them with a foundation for the fast-food restaurant. This activity and a notice in the local newspaper were the first notices to GTA that a different use of the leasehold was being considered by Shell. A few weeks later, in April 1974, GTA filed suit for a declaratory judgment to establish the

1. GTA also raised in its motion to correct errors an issue as to the sufficiency of the evidence, but it is without effective position to assert such error when appealing a negative judgment. *Metrailer* v. *Bishop* (1959), 130 Ind. App. 77, 162 N.E.2d 94.

respective rights of the parties under the lease and amendments thereto, and for a permanent injunction to prevent further use by Shell of the westerly entrance to the Green Tree Shopping Center.

The trial court specifically found, among other things, that all negotiations between Shell and Ollie's Trolley, Inc. had been terminated; that Shell had not executed any sublease at any time with any person or corporation; that the rent under the lease was a fixed amount and Shell's payments were made continuously during the period in which the service station was temporarily closed; and that the automobile service station was reopened for business on October 28, 1974, and has continued in operation since that time.

GTA's sole contention of error is that the judgment of the trial court is contrary to law. In support of its contention, GTA argues that the following stipulated events terminated Shell's determinable easement: (1) Shell ceased all automobile service station use of the leasehold in April, 1973, and commenced negotiations in November 1973, for location of a fast-food restaurant on the leasehold; and (2) Shell allowed gasoline pump islands on the leasehold to be removed and replaced with the foundation for the fast-food restaurant on or about March, 1974.

GTA also alleged by affidavit a third event that, for two or more days in March, 1975, "a pet shop was operated from a van-type vehicle located on the northeasterly corner of" the leasehold and it was connected to an electric utility line servicing the leasehold. Shell's answering affidavit produced conflicting evidence concerning the pet shop.

In reviewing an assignment of error specifying that the trial court's decision was contrary to law, this Court may consider only that evidence which is most favorable to the trial court's decision. The decision will be affirmed unless the evidence is without conflict and

leads to only one conclusion and the trial court arrived at a different conclusion. *Marshall* v. *Ahrendt* (1975), 165 Ind. App. 359, 332 N.E.2d 223. We cannot say that it affirmatively appears that reasonable men could not have arrived at the same conclusion reached by the trial court concerning each of the three events. *Dyer Construction, Inc.* v. *Ellas Construction, Inc.* (1972), 153 Ind. App. 304, 287 N.E.2d 262.

The issue concerns the proper construction to be given to the lease and its amendments which created the easement. "The nature, extent and duration of an easement created by an express agreement or grant must be determined by the provisions of the instrument creating the easement." *Erie-Haven, Inc.* v. *First Church of Christ* (1973), 155 Ind. App. 283, 292 N.E.2d 837.

It is the duty of the court, in construing instruments creating easements, to discover and give effect to the intention of the parties. Where the language is not uncertain or ambiguous the intention of the parties is determined by a proper construction of the language of the instrument. *L. & G. Realty & Construction Co.* v. *City of Indianapolis* (1957), 127 Ind. App. 315, 139 N.E.2d 580, 585. The language establishing the limitation of the easement in this case, however, is not clear.

The language of paragraph three, which includes the words "so long as", in the February 27, 1967 amendment to the lease, establishes that the easement was intended to be a qualified easement determinable upon the happening of a particular event. That an easement, like any other estate in land, may be determinable was discussed and recognized in *Erie-Haven, Inc., supra; See also: Budnick* v. *Indiana National Bank* (1975), 165 Ind. App. 457, 333 N.E. 2d 131.

Having established that the easement is determinable, we must now determine whether Shell extinguished its easement merely by temporarily discontinuing its use or whether an actual change of use was required to extinguish the easement.

The trial court found that the service station was temporarily closed on April 4, 1973, and remained unused until it was reopened one and a half years later. It further found that although Shell negotiated with Ollie's Trolley, Inc. concerning the possibility of subleasing all or a portion of said premises to Ollie's Trolley, Inc., Shell never executed a sublease with any person or corporation.[2] We cannot hold that simply by talking about and negotiating for a change in the use of the lot Shell automatically lost its determinable easement.

GTA cites no cases from Indiana or other states, nor do we find any, which establish that the non-use of a determinable easement will cause its automatic extinguishment. Cases cited by GTA involve the construction of warranty deeds of real estate which conveyed title, so long as the premises were used for a particular purpose. In those cases the trial courts concluded that the determining events had occurred and the questions of what the determining events were or whether they had occurred were not the issues considered on appeal. *See: Lindsay* v. *Wigal* (1969), 145 Ind. App. 338, 250 N.E.2d 755; *Fall Creek School Township* v. *Shuman* (1913), 55 Ind. App. 232, 103 N.E. 677; *Malone* v. *Kitchen* (1922), 79 Ind. App. 119, 137 N.E. 562.

As a general rule an easement created by grant is not lost by neglect of enjoyment, or mere non-use. *Kammerling* v. *Grover* (1893), 9 Ind. App. 628, 36 N.E. 922; *The Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Griswold* (1912), 51 Ind. App. 497, 97 N.E. 1030; *Perry* v. *Carey* (1918), 68 Ind. App. 56, 119 N.E. 1010. Only in the case where a qualification, in the nature of a limitation, clearly provides for a continued user, would a failure to use, or discontinuance of use, terminate the ease-

2. In paragraph number 12 under the lease, Shell was permitted to sublet the premises: "Shell may at any time assign this lease or sublease all or any part of the premises, but shall not be relieved thereby of its obligations hereunder." Such a transaction, however, would terminate the easement if the use of the premises was changed.

ment. *See: Hanks* v. *Magnolia Petroleum Co.* (Court of Civ. App. of Tex., 1928), 14 S.W.2d 348, 351.

The instrument before this Court does not clearly provide such a qualification. A look at the whole lease reveals support for the trial court's finding. The lease to which the easement is attached was to continue for a period of fifteen years and is renewable. The fact that the parties agreed that Shell could sublet indicates that the possibility of a discontinuance of use between occupancy by the tenant and occupancy by the subtenant was contemplated. If the subtenant planned to use the leasehold for a service station, the easement would necessarily continue to exist. Similarly, it can be inferred that the parties did not intend that Shell could utilize the easement initially as it related to its service station activity but should later be denied such utilization relating to the same activity where a period of non-use of the premises intervened.

Before an easement will be terminated through non-use, the requirement of uninterrupted use must be clearly stated and reasonably inferred from the intentions of the parties. Since this is not the case here, the decision of the trial court is not contrary to law.

Regarding GTA's final contention that Shell caused the easement to terminate by permitting Ollie's Trolley to remove the gasoline pumps and place a small foundation on the premises, we note that the construction was not authorized by Shell. Further, the record shows that the foundation has not been removed, and has not interfered with the reopening and subsequent use of the premises for service station purposes.

After a consideration of the entire instrument, and the evidence of the intent of the parties and the surrounding circumstances, we hold that a reasonable construction of the language of the lease and amendments allows a finding that in this case where the determinable easement was attached

to and a part of a lease, temporary non-use of the premises (which did not violate the lease) did not constitute the intended limiting event extinguishing the right to use the driveway.

We therefore affirm the trial court's decision.

Affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 358 N.E.2d 750.