**FOR PUBLICATION**



ATTORNEYS FOR APPELLANTS:

**KARL L. MULVANEY**
**SHANNON D. LANDRETH**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

**MICHAEL E. ARMEY**
Warsaw, Indiana

**SHELDON L. LEBOLD**
Orland Hills, Illinois

ATTORNEYS FOR APPELLEE:

**STEPHEN R. SNYDER**
**RANDALL L. MORGAN**
Snyder Morgan LLP
Syracuse, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| TRUST NO. 6011, LAKE COUNTY TRUST COMPANY, TRUSTEE, SIMON BEEMSTERBOER, and VICTORIA J. BEEMSTERBOER, | ) ) ) ) ) |
| Appellants-Defendants, | ) ) |
| vs. | ) No. 43A05-1108-PL-433 ) |
| HEIL'S HAVEN CONDOMINIUMS HOMEOWNERS ASSOCIATION, | ) ) ) |
| Appellee-Plaintiff. | ) ) |

APPEAL FROM THE KOSCIUSKO SUPERIOR COURT
The Honorable Rex. L. Reed, Special Judge
Cause No. 43D01-1006-PL-96

**April 17, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Simon and Victoria J. Beemsterboer reside on property ("the Beemsterboer Property") owned by Trust No. 6011, Lake County Trust Company, Trustee. Victoria is the beneficiary of the Trust. The Beemsterboer Property shares a border with Heil's Haven Condominiums. When the condominiums were developed, several agreements were executed between the Heil's Haven Condominiums Homeowners Association ("the Association") and the previous owners of the Beemsterboer Property, granting various easements to each to use portions of the others' property. The Beemsterboers attempted to develop their property in a manner that allegedly infringed on the easements originally granted to the Association. The Association filed suit against the Trust and the Beemsterboers (collectively referred to as "the Beemsterboers") seeking to enjoin the Beemsterboers from improving their property in a manner that infringed on the easements, and the trial court granted the requested relief.

The Beemsterboers appeal, arguing that the trial court erred in granting injunctive relief because (1) one of the agreements has terminated; (2) the improvements can be made in a manner that does not infringe upon the Association's existing easements to use the Beemsterboer Property; and (3) the Association's encroachment is greater than that permitted by agreement. We conclude that one agreement has terminated and that the improvements can be made in a manner that does not infringe upon the Association's continuing easements. We further conclude that the trial court's order deals effectively with the Association's encroachment. Therefore, we affirm in part and reverse in part.

**Facts and Procedural History**

The Beemsterboer Property is located in Kosciusko County, west of and adjacent to property occupied by Heil's Haven Condominiums. These properties extend roughly from Hatchery Road on the south to Lake Wawasee on the north. The properties were once a single parcel owned by James and Jane Fry. The Frys lived in a residence on the west side of the property and operated a motel on the east side. In the 1980s, the Frys converted the motel into Heil's Haven Condominiums and divided the single parcel into two parcels, each with frontage on Lake Wawasee: a western parcel with the personal residence and an eastern parcel for the condominiums. Ultimately, the Frys' western parcel came into the possession of the Beemsterboers.

When Heil's Haven was developed, the Frys and the Association executed several written agreements creating easements for the shared use of property and an agreement granting the Association an easement over a portion of the Frys' property.[1] All relevant documents were duly recorded. Two are titled "Cross License Agreement," one dealing with the use of a water pump and a sidewalk ("the Water and Walkway Easement"), and the other

---

[1] Although these agreements use the term "license," the interests conveyed therein are effectively easements, and the parties treat them as such. *See* 25 Am. Jur. 2d *Easements and Licenses* § 2 (2012) ("While it has been said to be difficult to distinguish an easement from a license in real property, easements and licenses are distinct in principle. An easement is more than a mere personal privilege in that it is a grant of limited use of land which burdens the servient estate for the benefit of the dominant estate, whereas a license merely confers a personal privilege to do some act or acts on the land.") (footnotes omitted); *Id*. at § 117 ("A license in real property is the permission or authority to engage in a particular act or series of acts upon the land of another without possessing an interest therein. It is a personal, revocable, and unassignable privilege, conferred either by writing or parol."); *Indus. Disposal Corp. of Am. v. City of E. Chicago, Dep't of Water Works*, 407 N.E.2d 1203, 1205-06 (Ind. Ct. App. 1980) ( "To distinguish the legal relationship 'license' from the more substantial relationship 'easement,' license should be limited to a revocable relationship. Under such a classification, an irrevocable relationship would constitute an easement …, no matter how created, because an irrevocable license in legal effect is no different than an easement.") (citation omitted).

dealing with a septic system shared by the two parcels ("the Septic Easement"). Exs. A and B. Two other agreements grant an easement to the Association only ("the Replacement Walkway Easement" and "the Encroachment Agreement"). Exs. C and D.

The Water and Walkway Easement granted the Frys, and their successors and assigns, "a license for use of the pump and utility house, mechanical equipment therein and lines connecting said pump and utility house to [the Frys' property]" and granted the Association, and its successors and assigns, the use of a paved sidewalk running along the east side of the Frys' property (now the Beemsterboer Property) for "ingress and egress" to Lake Wawasee. Ex. B. at 3. The walkway easement granted in the Water and Walkway Easement is identified in a 2010 Survey as "Cross License Agreement – Ingress and Egress." Plaintiff's Ex. S. The Water and Walkway Easement provided in relevant part,

> 3. Use of License Premises. Use of [the sidewalk] is confined to the present uses of [the Association], the present buildings thereon and the present lack of access to the lakefront of [the Association] by direct walkway. ….

> 4. Use of License Premises. Use of [the pump and utility house, etc.] is confined to present uses of [the Frys], the present buildings thereon, and the present lack of individual water well [on the Frys' property]. ….

> ….

> 6. …. Should the water lines connecting said pump and utility house with [the Frys' property] fail to such an extent that a water supply is not available to [the Frys' property], then *this Cross License Agreement* shall terminate, ten (10) days after such failure, and all rights granted hereunder shall terminate.

> 7. Termination of License. *The licenses granted herein* may be terminated by agreement of the parties, duly recorded, *or shall terminate automatically as hereinabove described* or such shall also terminate [a]utomatically at such time as [the Association] has walkway access to the

4

lakefront portion [of the Association's property] by means other than [the sidewalk].

Ex. B. at 3 (emphases added).

In the event the Water and Walkway Easement terminated, the Frys and the Association had a backup plan: the Replacement Walkway Easement. Specifically, the Replacement Walkway Easement granted an easement to the Association to use a three-foot-wide area on the Frys' property (now the Beemsterboer Property) when "the current License for ingress and egress to the lakefront of the Heil's Haven [Condominiums] no longer exists and at such time the [replacement walkway area] may be used for installation of a concrete sidewalk to be used by owners of Units in the Heil's Haven Condominiums or their guests." Ex. D. at 2.

The Septic Easement granted an easement to both the Frys and the Association to use a common septic and filter bed system. One septic tank is on the Association's property and the other is on the Beemsterboer Property. The Septic Easement granted each party "a license for the location and use of two (2) septic tanks, one (1) sewage pump and one (1) filter bed." Ex. A. at 3. The Septic Easement further provided that "[e]xclusive use of the [licensed area] to either Fry or [the] Association is *not* hereby granted," and that "[t]he license granted herein may be terminated by agreement of the parties, duly recorded." *Id.* (emphasis added). Presently, the Beemsterboers do not require the use of the septic system, but the Association does.

Finally, the Encroachment Agreement permitted the Association to maintain a deck that encroached onto the Frys' property (now the Beemsterboer Property) "for so long as the

5

wooden deck which constitutes such encroachment is not expanded, altered or modified in any manner and continues to be used as part of the [property] known as Heil's Haven Condominiums." Ex. C. at 2.[2] The 2010 Survey shows that the deck's encroachment is greater than that described in the Encroachment Agreement.[3] Ex. S. However, the deck has not been expanded, altered, or modified since the Encroachment Agreement was executed.

Subsequent to the development of Heil's Haven, the Frys sold their residence, and it was eventually purchased/inherited by Garry Bickel, the owner immediately prior to the Beemsterboers. During Bickel's ownership, a fire destroyed the residence and the water lines to the pump and utility house mentioned in the Water and Walkway Easement. Bickel built a new residence with its own water supply on his property. Bickel also installed a new sidewalk that he intended the condominium owners to use in the same manner as they had used the old sidewalk. Bickel believed that the new sidewalk was located wholly within the area licensed to the Association in the Water and Walkway Easement. Bickel later learned, however, that the new sidewalk extended farther onto his property than provided for in the Water and Walkway Easement. Currently, the sidewalk installed by Bickel is the only paved path that runs from Heil's Haven's parking lot to the lakefront. The condominium owners use the sidewalk to transport paddleboats, sailboats, and other equipment from the parking lot to the lakefront.

---

[2] An earlier encroachment agreement contains the same description of the Frys' property encroached upon by Heil's Haven's deck. Plaintiff's Ex. X. The record does not indicate why a second identical agreement was executed, but it is not relevant to our analysis.

[3] The Association argues that the Frys were aware of the deviation and consented to it. Tr. at 52-53.

In 2008, Bickel sold the property to the Trust, and the Beemsterboers began residing there. In a March 2010 letter, Simon Beemsterboer informed the Association of his intent to install a fence along the parties' common property line. Plaintiff's Ex. Q. The proposed fence would enclose the Beemsterboers' yard, including the sidewalk installed by Bickel and the easement granted to the Association in the Water and Walkway Easement. *Id.* The fence would also enclose one of the septic tanks referred to in the Septic Easement.

Also that spring, the Beemsterboers began constructing a stairway from their second story deck. The stairway and its supporting posts lie wholly within the Beemsterboer Property. In other words, the stairway and posts are not in the walkway area described in the Water and Walkway Easement. Tr. at 24, 105, 114. However, the construction of the Beemsterboers' stairway resulted in the removal of a portion of the edge of the sidewalk and degrades the usable width of the sidewalk. Apparently, this occurred because, as previously mentioned, the sidewalk installed by Bickel extended farther onto the Beemsterboer Property than the walkway area described in the Water and Walkway Easement.

On June 2, 2010, the Association filed a complaint for preliminary and permanent injunctions against the Beemsterboers seeking to enjoin them from constructing the fence and continuing construction of the staircase. That same day, the trial court issued a temporary restraining order granting the requested relief. On July 13, 2010, following an evidentiary hearing, the trial court entered a preliminary injunction prohibiting the Beemsterboers from constructing a fence or other structure obstructing the areas described in the Water and Walkway Easement and the Septic Easement. The Beemsterboers filed a counterclaim,

7

alleging that the Water and Walkway Easement and the Septic Easement no longer served any purpose and/or were terminated and that Heil's Haven's deck encroachment should be removed because it is outside the encroachment area described in the Encroachment Agreement.

The trial court conducted a bench trial, ordered the parties to submit proposed findings of fact and conclusions thereon, and took the matter under advisement. The trial court adopted the Association's proposed findings of fact and conclusions thereon and entered a judgment ("the Judgment") that provides in relevant part as follows:

**FINDINGS OF FACT**

….

9. By letter dated March 19, 2010, [] Simon Beemsterboer, notified Condominium Association of his intent to install a fence along the common property line of the parties which, if installed, would prevent access of [the Association] over the ingress/egress license running from Condominium's roadside parking area to Condominium's lakefront over the area depicted as "Cross License Agreement – Ingress and Egress []" on the [2010 Survey]. Exhibit Q.

10. The fence proposed by [the Beemsterboers] would also prevent access to a septic tank lid shown on [the 2010 Survey] which access is needed for the purpose of cleaning the septic tank which constitutes a part of the system utilized by Condominium for its connection to the Turkey Creek Regional Sewer District sewer line adjacent to Condominium property. Exhibit Q.

….

12. In the Spring of 2010, [the Beemsterboers] undertook a construction project by which a staircase from a second story deck on [their] property was relocated from the west side of the deck to the east side of the deck. This construction resulted in a destruction of a portion of the sidewalk utilized by Condominium owners and the east side staircase encroaches into

8

the sidewalk area intended for use by Condominium owners and as reconstructed by Bickel. The newly constructed staircase prevents access by Condominium owners to the Condominium lakefront and in particular, obstructs the usable width of the sidewalk for the purpose of transporting items from the lakefront on the Condominium to the parking area of the Condominium. Exhibits K-P; Exhibit S.

13. Condominium owners have no means of access from the roadside of Condominium property to the lakefront of Condominium property other than over and across [the license granted in the Water and Walkway Easement].

14. It is impractical for Condominium owners to relocate the two septic tanks partially on [the Beemsterboers'] property, which tanks are utilized for the connection by Condominium to the Turkey Creek Regional Sewer District sewer line.

15. With the exception of the portion of [the Water and Walkway Easement] providing for the sharing of the water supply and utility building, which terminated when a new well was installed on the Beemsterboer [P]roperty by Bickel, none of the other agreements have terminated.

## CONCLUSIONS OF LAW

….

2. The fence proposed by [the Beemsterboers] would violate the provisions of [the Water and Walkway Easement and the Septic Easement].

3. The staircase installed by [the Beemsterboers] interferes with [the Association's] use of [the Water and Walkway Easement].

4. [The Association] is entitled to utilize, for ingress and egress purposes, the sidewalk reconstructed by Bickel on the Beemsterboer [P]roperty to its full extent even though such sidewalk may be shown to be slightly outside the boundaries of [the Water and Walkway Easement] as shown by [the 2010 Survey].

5. [The Beemsterboer Property] is subject to the terms and provisions of [the Water and Walkway Easement, the Septic Easement, the Encroachment Agreement, and the Replacement Walkway Easement],

9

excepting only those provision of [the Water and Walkway Easement] which pertain to a water supply to the Beemsterboer [P]roperty.

## JUDGMENT

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

1.    [The Beemsterboers], and their successors and assigns, are permanently enjoined from obstructing [the Association's] use of the areas described in [the Water and Walkway Easement and the Septic Easement]. [The Beemsterboers] shall not place a fence which in any fashion blocks [the Association's] access to or use of such areas.

2.    [The Beemsterboers] shall remove the staircase depicted on the [2010 Survey] and shall repair those portions of the sidewalk removed for the purpose of constructing such staircase.  ….

3.    [The Beemsterboers] shall not in any fashion interfere with [the Association's] use of the reconstructed sidewalk, installed by Garry Bickel … including that portion of the sidewalk immediately adjacent to [the Water and Walkway Easement] located outside the boundaries thereof.

4.    [The Beemsterboers] and their successors and assigns are permanently enjoined from in any fashion interfering with [the Association's deck], the subject of [the Encroachment Agreement], even though the actual location of the deck encroachment may vary slightly from the description contained in the [the Encroachment Agreement].

Appellants' App. at 11-14.

The Beemsterboers filed a motion to correct error and a motion to stay the judgment.

The trial court denied the first and granted the latter.  The Beemsterboers appeal.

### Discussion and Decision

#### *Standard of Review*

When, as here, issues are tried upon the facts by the court without a jury, Trial Rule 52

provides that a trial court "shall find the facts specially and state its conclusion thereon"

10

either "[u]pon its own motion" or upon "the written request of any party filed with the court prior to the admission of evidence." "Our standard of review on judgments under Trial Rule 52 differs slightly depending upon whether the entry of specific findings and conclusions comes *sua sponte* or upon [written] motion by a party." *Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 614 (Ind. Ct. App. 2011), *trans. denied* (2012). According to the record before us, neither party filed a written request for findings of fact and conclusions thereon, and therefore the trial court entered findings and conclusions sua sponte.

> Where the trial court enters specific findings *sua sponte*, [] the specific findings control our review and the judgment only as to the issues those specific findings cover. Where there are no specific findings, a general judgment standard applies and we may affirm on any legal theory supported by the evidence adduced at trial.

*Id.*

> We apply the following two-tier standard of review to sua sponte findings and conclusions: whether the evidence supports the findings, and whether the findings support the judgment. Findings and conclusions will be set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility.

*Barkwill v. Cornelia H. Barkwill Revocable Trust*, 902 N.E.2d 836, 839 (Ind. Ct. App. 2009) (citations and quotation marks omitted), *trans. denied*. "[W]hile we defer substantially to findings of fact, we do not do so to conclusions of law." *McCauley v. Harris*, 928 N.E.2d 309, 313 (Ind. Ct. App. 2010) (citation omitted), *trans. denied* (2011). "We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions." *Id.*

## *I. The Water and Walkway Easement*

The Beemsterboers argue that the trial court erred in finding that one, but not both, of the easements granted in the Water and Walkway Easement remains in effect. They challenge Finding 15 and Conclusions 2 through 5 and ask us to reverse Paragraphs 1 through 3 of the Judgment. Appellants' App. at 12-14. The trial court found that the easement granted to the Frys, and their successors and assigns, to use the pump and utility house, etc., had terminated but that the easement for ingress and egress granted to the Association had not. The Beemsterboers contend that, pursuant to its express terms, the Water and Walkway Easement terminated in its entirety when the fire burned down Bickel's residence.

To resolve this issue we must construe the terms of a written contract, a pure question of law. Therefore, our standard of review is de novo. *Drees Co., Inc. v. Thompson*, 868 N.E.2d 32, 38 (Ind. Ct. App. 2007), *trans. denied*. Fundamental rules of construction guide us here. "Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning." *Tanton v. Grochow*, 707 N.E.2d 1010, 1013 (Ind. Ct. App. 1999). "The terms of a contract are not ambiguous merely because controversy exists between the parties concerning the proper interpretation of terms." *Id.* "Where the language is not uncertain or ambiguous the intention of the parties is determined by a proper construction of the language of the instrument." *GTA v. Shell Oil Co.*, 171 Ind. App. 647, 650, 358 N.E.2d 750, 752 (1977).

More specifically, we have said:

> "The nature, extent and duration of an easement created by an express agreement or grant must be determined by the provisions of the instrument creating the easement. An easement is an interest in land and may be held in fee. A fee simple or lesser estate in land may be created so as to be defeasible. While an easement is normally held in fee, it is well established that an easement, like any other estate in land, may be held as a determinable fee. *An easement which is held as a determinable fee will terminate upon the happening of the event upon which its existence is conditioned without any action by the grantor of the estate or his successors in interest.*"

*Larry Mayes Sales, Inc. v. HSI, LLC*, 744 N.E.2d 970, 972-73 (Ind. Ct. App. 2001) (quoting

*Erie-Haven, Inc. v. First Church of Christ*, 155 Ind. App. 283, 289, 292 N.E.2d 837, 841

(1973)) (emphasis added).

Paragraph 6 of the Water and Walkway Easement states, "Should the water lines

connecting said pump and utility house with [the Frys' property] fail to such an extent that a

water supply is not available to [the Frys' property], then *this Cross License Agreement* shall

terminate." Ex. B. at 3 (emphasis added). The Association asserts that "this" refers only to

the topic of Paragraph 6; namely, the water easement. We disagree. "This" obviously refers

to "Cross License Agreement," which is the title of the instrument and thus encompasses

both easements granted therein.

This construction is consistent with the rest of the instrument. Paragraph 7 governs

termination and applies to the "license*s*" granted in the Water and Walkway Easement.

Paragraph 7 sets forth three events that will terminate both easements:

> *The licenses granted herein* may be terminated by agreement of the parties, duly recorded, *or shall terminate automatically as hereinabove described* or such shall also terminate [a]utomatically at such time as [the Association] has

13

> walkway access to the lakefront portion [of the Association's property] by
> means other than [the sidewalk].

*Id.* One of the events that terminates the "licenses" is "as hereinabove described," which clearly refers to the immediately preceding paragraph, the only other place termination is addressed.

We conclude that the Water and Walkway Easement automatically terminated by its own express terms when the Bickel residence burned down and the water supply failed. Therefore, we conclude that the trial court clearly erred in determining in Finding 15 that the provisions of the Water and Walkway Easement pertaining to the Association's easement for ingress and egress are still in effect.[4] Further, Conclusions 3 and 4 are clearly erroneous, as are 2 and 5 to the extent that they are based on Finding 15. Accordingly we reverse the following: the portion of Paragraph 1 of the Judgment that permanently enjoins the Beemsterboers from obstructing the Association's use of the walkway easement described in the Water and Walkway Easement and from placing a fence that blocks the Association's access to or use of that area; Paragraph 2 of the Judgment, ordering the Beemsterboers to remove the staircase and repair the sidewalk; and Paragraph 3 of the Judgment, prohibiting

---

[4] The Association argues that the two easements granted in the Water and Walkway Easement are unrelated. That argument disregards that the parties chose to combine the easements in one agreement entitled "Cross License Agreement." The Association also argues that the Frys would not have been able to develop the condominiums if the condominiums did not have access to the lakefront. Although the necessity of a walkway illuminates the purpose of the Water and Walkway Easement, it does not affect the construction of its termination provisions.

14

the Beemsterboers from interfering with the reconstructed sidewalk.[5]  Appellants' App. at 13-15.

## II.  *The Septic Easement*

The Beemsterboers also contend that the trial court clearly erred in determining in Finding 10 that their proposed fence would prevent the Association's access to a septic tank lid.  Finding 10 underlies both Conclusion 2, in which the trial court concluded that the fence would violate the Septic Easement, and part of Paragraph 1 of the Judgment, in which the trial court permanently enjoined the Beemsterboers from obstructing the Association's use of or placing a fence which in any fashion blocks the Association's access to the easement area described in the Septic Easement.  The Beemsterboers do not argue that the Septic Easement terminated, but rather that the Septic Easement does not require that the septic system be maintained in an unfenced area.   The Beemsterboers further argue that the Association would have access to the easement area described in the Septic Easement either through a gate opening, a removable piece of fence, or other accommodation presented at trial. Appellants' Br. at 26 (citing Tr. at 31, 112-13).  The Association baldly asserts that the fence would prevent access to the septic tank and do not address whether the accommodations offered by the Beemsterboers would provide adequate access.

In resolving this issue we observe that

[i]t is well established that easements are limited to the purpose for which they are granted.  The owner of an easement, known as the dominant estate,

---

[5] We observe that the Replacement Walkway Easement grants the Association an easement to install a concrete sidewalk for purposes of ingress and egress to the lakefront.

possesses all rights necessarily incident to the enjoyment of the easement. The dominant estate holder may make repairs, improvements, or alterations that are reasonably necessary to make the grant of the easement effectual. The owner of the property over which the easement passes, known as the servient estate, may use his property in any manner and for any purpose consistent with the enjoyment of the easement, and the dominant estate cannot interfere with the use. All rights necessarily incident to the enjoyment of the easement are possessed by the owner of the dominant estate, and it is the duty of the servient owner to permit the dominant owner to enjoy his easement without interference. The servient owner may not so use his land as to obstruct the easement or interfere with the enjoyment thereof by the owner of the dominant estate. Moreover, the owner of the dominant estate cannot subject the servient estate to extra burdens, any more than the holder of the servient estate can materially impair or unreasonably interfere with the use of the easement.

*McCauley*, 928 N.E.2d at 314 (citations and quotations omitted).

Our review of the record before us reveals that at trial, a condominium owner testified that the Association would have access to the septic tank on the Beemsterboer Property if a gate was built into the Beemsterboers' proposed fence. Tr. at 31. In its appellee's brief, the Association does not cite to any evidence in the record that supports the trial court's finding that the fence would block access to the septic tank. The Association does not argue that the accommodations offered by the Beemsterboers would be insufficient. Accordingly, we conclude that Finding 10 and Conclusion 2 are clearly erroneous. Nevertheless, we observe that Paragraph 1 of the Judgment permanently enjoins the Beemsterboers from "obstructing" the use of the area described in the Septic Easement and prohibits them from placing "a fence which in any fashion blocks" the Association's access to or use of the area described in the Septic Easement. A fence that provides ready access to the septic tank would not obstruct or block the Association's access to the area described in the Septic Easement. However, a

fence that does not provide ready access to the septic tank would obstruct and block the Association's access. Therefore, we need not reverse this portion of the Judgment.

### III. The Encroachment Agreement

Finally, we turn to the Beemsterboers' challenge to Paragraph 4 of the Judgment, in which the trial court permanently enjoined them "from in any fashion interfering with the [Association's] deck, … even though the actual location of the deck encroachment may vary slightly from the description contained in [the Encroachment Agreement]." Appellants' App. at 14. The Beemsterboers present two arguments. First, they assert that it was error for the trial court to grant the Association the right to encroach upon their property beyond that described in the Encroachment Agreement. However, they "only request that the deck be cut back to conform to the easement in the event the order to remove the stairway is affirmed." Appellants' Br. at 28; Appellants' Reply Br. at 15. Because we have reversed the trial court's order to remove the stairway, we need not address this issue.

Second, the Beemsterboers argue that Paragraph 4 permanently enjoins them from "any" interference with the deck "in all circumstances." Appellants' Br. at 27. They note that the Encroachment Agreement permits the Association to maintain the deck "for so long as the wooden deck which constitutes such encroachment is not expanded, altered or modified in any manner and continues to be used as part of the [property] known as Heil's Haven Condominiums." Ex. C. at 2. The Beemsterboers' reading of the trial court's order is overly expansive. We read the trial court's order as restricting the Beemsterboers from interfering with the deck based on the fact that its current and historical encroachment is

17

somewhat greater than that described in the Encroachment Agreement. The trial court's order does not affect the terms of the Encroachment Agreement. Accordingly, we affirm Paragraph 4 of the Judgment.

### *Conclusion*

We affirm the portion of Paragraph 1 of the Judgment pertaining to the Septic Easement, as well as Paragraph 4. We reverse the portion of Paragraph 1 pertaining to the Water and Walkway Easement, as well as Paragraphs 2 and 3.

Affirmed in part and reversed in part.

FRIEDLANDER, J., and BAILEY, J., concur.