**MACY ELEVATOR, INC., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 09–515L.**

United States Court of Federal Claims.

June 21, 2012.

J. Robert Sears, St. Louis, MO, for plaintiffs. Brent W. Baldwin and Steven M. Wald, St. Louis, MO, and Thomas S. Stewart and Elizabeth G. McCulley, Kansas City, MO, of counsel.

Lary Cook Larson, United States Department of Justice, Washington, DC, with whom was Ignacia S. Moreno, Assistant Attorney General, for defendant.

## OPINION

FIRESTONE, Judge.

In this "Rails–to–Trails" case, this court previously ruled that the government violated the Fifth Amendment when it "took" an interest in plaintiffs' property without paying just compensation by authorizing recreational trail use across plaintiffs' properties under a Notice of Interim Trail Use ("NITU"), issued pursuant to the National Trails System Act Amendments of 1983 ("Trails Act"), 16 U.S.C. § 1247(d) (2006). *Macy Elevator v. United States,* 97 Fed.Cl. 708, 731–36 (2011). Now pending before the court are the parties' cross-motions for summary judgment on the methodology that the parties will use to value plaintiffs' properties in determining the correct measure of just compensation. In making this determination, the court must address two issues that it had deferred in its earlier liability decision. First, the court must rule on whether "railbanking," as authorized under the Trails Act, falls within the scope of the railroad purpose easements granted by these plaintiffs.[1] *Id.* at 730. Second, the court must determine "whether the Indiana statute on railroad abandonment is relevant to valuing the property interest taken from plaintiffs." *Id.* at 735.

While the parties were briefing those issues before this court, the Supreme Court of Indiana accepted certification on similar issues in a different Rails–to–Trails case pending in this court. On March 20, 2012, the Indiana Supreme Court issued its decision in that case. *Howard v. United States,* 964 N.E.2d 779 (Ind.2012). The Indiana Supreme Court, in line with the liability opinion in this case, concluded that "under Indiana law, ... interim trail use pursuant to the federal Trails Act [is] not within the scope of railroad [purpose] easements." *Id.* at 784. The Indiana Supreme Court also clarified that "railbanking" is not within the scope of railroad purpose easements under Indiana law. *Id.* The Indiana Supreme Court did not discuss, however, "the consequences of [a finding that "railbanking" and interim trail use fall outside the scope of railroad purpose easements] under Indiana law." *Id.* (citing the government's brief in that case). Therefore, the Indiana Supreme Court did not address whether railroad purpose easements in Indiana terminate, by legal abandonment or otherwise, when those easements are used as recreational trails subject to "railbanking."

After the Indiana Supreme Court issued its opinion in *Howard v. United States,* plaintiffs, on April 30, 2012, filed their reply and response to the pending cross-motions. Pls.' Resp., ECF No. 79. The government has not filed a reply. For the reasons that follow, plaintiffs' motion for partial summary judgment is **GRANTED,** and the government's motion for partial summary judgment is **DENIED.**

## I. STANDARD OF REVIEW

When considering a summary judgment motion, the court's proper role is not to "weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Here, the parties' dispute involves only the legal issue of the correct method for determining just compensation under the Trails Act and Indiana law. Summary judgment is appropriate where the only issues to be decided are issues of law. *Huskey v. Trujillo,* 302 F.3d 1307, 1310 (Fed.Cir.2002) (citing *Dana Corp. v. United States,* 174 F.3d 1344, 1347 (Fed.Cir.1999)); 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2725 (3d ed. 2012) ("It necessarily follows from the standard set forth in the rule that when the only issues to be decided in the case are issues of law, summary judgment may be granted.").

## II. DISCUSSION

█ The "just compensation" due for a taking is "reimbursement to the owner for

---

1. The Trails Act authorizes the Surface Transportation Board to preserve railroad corridors not currently in use for possible future rail use by converting those corridors into recreational trails. *Caldwell v. United States,* 391 F.3d 1226,

1228 (Fed.Cir.2004). Although the corridor is not used as a railroad during the period of interim trail use, it remains intact for potential future rail service. *Id.* at 1229. This process is called "railbanking." *Id.*

the property interest taken. [The property owner] is entitled to be put in as good a position pecuniarily as if his property had not been taken." *United States v. Va. Elec. & Power Co.*, 365 U.S. 624, 633, 81 S.Ct. 784, 5 L.Ed.2d 838 (1961) (quotation omitted); *Otay Mesa Prop., L.P. v. United States*, 670 F.3d 1358, 1364 (Fed.Cir.2012) ("Where the property interest permanently taken is an easement, the 'conventional' method of valuation is the 'before-and-after' method, i.e., 'the difference between the value of the property before [the easement was imposed] and after the Government's easement was imposed.'" (quoting *Va. Elec.*, 365 U.S. at 632, 81 S.Ct. 784)). The parties do not dispute that just compensation in this case is the difference in the value of the property before and after the taking. Instead, the parties' dispute centers on the precise status of the "before" condition of plaintiffs' properties.

To determine the "before" condition of plaintiffs' properties, the court asks "what interest [plaintiffs] would have enjoyed under [state] law, in the absence of the" government action. *See Preseault v. Interstate Commerce Comm'n ("Preseault I")*, 494 U.S. 1, 21, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) (O'Connor, J., concurring). In this regard, to the extent that the government characterizes the "before" condition as measured by the condition of plaintiffs' properties immediately prior to the issuance of the NITU, this characterization is inconsistent with the nature of a "taking" under the Trails Act. By operation of law, the Trails Act blocks plaintiffs' state law reversionary interests when the NITU is issued and the taking occurs. What was "taken" from plaintiffs were these reversionary interests. If state law defines these

reversionary interests as a right to unencumbered land, and if these interests would have been triggered absent the issuance of the NITU, then the "before" condition of plaintiffs' properties should be those properties unencumbered by any easement.[2] *See Ladd v. United States*, 630 F.3d 1015, 1023 (Fed. Cir.2010) ("A taking occurs when state law reversionary property interests are blocked.... The NITU is the government action that prevents the landowners from possession of their property unencumbered by the easement." (citations omitted)); *Ybanez v. United States*, 102 Fed.Cl. 82, 87 (2011) ("The determination of what was taken from plaintiffs turns not on the status of the land at the time of the NITU but what interest plaintiffs would have had in the absence of the NITU."); *Raulerson v. United States*, 99 Fed.Cl. 9, 12 (2011) ("Contrary to defendant's position, the extent of the taking depends not on plaintiffs' property interests at the time of the NITU, but rather upon the nature of the state-created property interest that petitioners *would have enjoyed* absent the federal action and upon the extent that the federal action burdened that interest." (quotation omitted)).

In its present motion, the government argues that the "before" condition of plaintiffs' properties should be properties that remain encumbered by a railroad purpose easement. The government contends that, under Indiana statutory and common law, railroad purpose easements are not abandoned when they are "railbanked" under the Trails Act or transferred to a trail operator to be used as a recreational trail subject to reactivation as a railroad.[3]

**2.** In addition, the court notes in this case that the railroad and the trail operator executed a written trail use agreement, and the railroad transferred its interests in the pertinent rail corridor to the trail operator pursuant to the Trails Act, before the issuance of the NITU in this case. *Macy Elevator*, 97 Fed.Cl. at 712–13; Pls.' Proposed Findings of Fact ¶¶ 8–14, ECF No. 28; Def.'s Proposed Findings of Fact ¶¶ 12–14, ECF No. 34.

**3.** Much of the government's original argument in support of its "before" condition valuation approach hinged on its contention that, in Indiana, "railbanking" is within the scope of a railroad purpose easement, and that therefore plaintiffs' properties remained encumbered by a continuing

railroad purpose easement after the trail use agreement was executed and the NITU was issued. The government's "railbanking" argument has been rejected by the Indiana Supreme Court in *Howard v. United States*. 964 N.E.2d at 784 ("We hold that, under Indiana law, railbanking and interim trail use pursuant to the federal Trails Act are not within the scope of railroad easements and that railbanking and interim trail use do not constitute a permissible shifting public use."). Thus, the government's argument that plaintiffs' properties should be valued in the "before" status as property encumbered by a railroad purpose easement because of "railbanking" is rejected. The only issue remaining before the court is whether the Indiana law of abandon-

Plaintiffs argue in response that the Indiana law of abandonment does not control the outcome of the valuation question. According to plaintiffs, regardless of whether the railroad purpose easements were legally abandoned under Indiana law, the "before" status of their properties for valuation purposes is their properties unencumbered by any easements. Plaintiffs contend that once the railroad purpose easements across their properties were used as a recreational trail, the easements terminated, and plaintiffs should have received possession of their properties unencumbered by any railroad purpose easements. The imposition of recreational trail use by the NITU, plaintiffs argue, blocked those reversionary interests.

■■■ The court agrees with plaintiffs. In Indiana, easements may terminate and the property interest may revert to the underlying fee owner not only through abandonment, but also when reversion is expressly provided for in the granting deed, *Erie–Haven, Inc. v. First Church of Christ,* 155 Ind.App. 283, 292 N.E.2d 837, 841 (1973), or when the easement holder changes the use in a way that goes far beyond the purpose for which the easement was created, *see Selvia v. Reitmeyer,* 156 Ind.App. 203, 295 N.E.2d 869, 874 (1973). Applying these principles to the railroad purpose easements at issue in this case, the court concludes that, under Indiana law, the railroad purpose easements terminated when the railroad stopped using the easements for railroad purposes and instead transferred the easements to a trail operator for use as a recreational trail. Absent the continued imposition of trail use pursuant to the NITU, plaintiffs' properties would have reverted to plaintiffs in fee. Therefore, for the reasons discussed in detail below, the "before" condition of plaintiffs' properties must be valued as property unencumbered by any railroad purpose easements.

## A. Under Indiana law, easements may be terminated by means other than legal abandonment.

■■■ The abandonment of railroad easements under Indiana law is now controlled

by statute. *Consol. Rail Corp. v. Lewellen,* 682 N.E.2d 779, 783 (Ind.1997). However, this statutory scheme does not impact Indiana law governing the termination of easements by other means. For example, an easement may be terminated in Indiana by the terms of a written agreement. *See, e.g., Erie–Haven,* 292 N.E.2d at 841–42 (finding that an easement created through an express agreement terminated by the language of the instrument creating the easement); *GTA v. Shell Oil Co.,* 171 Ind.App. 647, 358 N.E.2d 750, 752 (1977); *see also* 11 Eric C. Surette, Ind. Law Encyc. *Easements* § 19 (2012). In determining whether the terms of a deed prescribe the method for terminating an easement, Indiana courts look to the particular language of the granting deed. *Erie–Haven,* 292 N.E.2d at 841 (citing *Spencer Stone Co. v. Sedwick,* 58 Ind.App. 64, 105 N.E. 525, 527 (1914)); *see also Trust No. 6011, Lake Cnty. Trust Co. v. Heil's Haven Condos. Homeowners Ass'n,* 967 N.E.2d 6, 14–16 (Ind.Ct.App.2012) (quoting *Larry Mayes Sales, Inc. v. HSI, LLC,* 744 N.E.2d 970, 972–73 (Ind.Ct.App.2001)). It is well-settled in Indiana that durational phrases, such as "so long as," coupled with terms that place a condition on the existence of the easement, create a determinable easement and indicate automatic expiration of the easement "upon the happening of the event upon which its existence is conditioned." *Erie–Haven,* 292 N.E.2d at 841; *Larry Mayes,* 744 N.E.2d at 973.

■■■ Furthermore, even in the absence of an express provision in a deed providing for extinguishment, the Indiana Court of Appeals has recognized that there are limits placed on the use of easements, and that an easement may be terminated if a new use is wholly incompatible with the original purpose for which the easement was created. In *Selvia v. Reitmeyer,* the Indiana Court of Appeals explained, in the context of an appurtenant easement, that an easement put to a use that goes far beyond its original purpose may result in termination. 295 N.E.2d at 874.[4]

ment of railroad lines affects just compensation in this case.

**B. Under Indiana law, the railroad purpose easements at issue in this case terminated either by their express terms or as a matter of law when the use of the easements changed from railroad use to recreational trail use.**

As discussed at length in the court's earlier decision, plaintiffs in this case own properties in Indiana over which previous landowners deeded approximately sixty easements to the predecessor of Norfolk and Western Rail Company during the second half of the nineteenth century to form a railroad corridor across plaintiffs' properties. *Macy Elevator,* 97 Fed.Cl. at 713. Other sections of the corridor were acquired by prescription or condemnation. *Id.*

Of the sixty deeds conveying railroad purpose easements, five—the Hakins, Hurst, Gould, Pence, and Brower deeds—contain words of duration indicating that the railroad purpose easements granted by those deeds are determinable. *Id.* at 714–716. Those deeds either limit the existence of the easement so long as the right-of-way is used for a railroad, or provide that the easement will revert when not used for railroad purposes. *Id.* The remaining class of deeds provide for the grant of a railroad purpose right-of-way without any additional limiting language (these are referred to in the court's liability opinion as the "Release of Right-of-Way" deeds and the Schindler deed). *Id.* at 714–15. The railroad purpose easements obtained through condemnation and adverse possession also lack specific deeded language indicating that the parties intended the easements to last for a limited duration.

**1. The Hakins, Hurst, Gould, Pence, and Brower deeds granted determinable easements that expired once the easements ceased to be used for railroad purposes.**

As noted above, easements in Indiana may be determinable. *Erie–Haven,* 292 N.E.2d

at 841. A determinable easement expires upon the happening of the event upon which its existence is conditioned, without any action by the landowner grantor. *Larry Mayes,* 744 N.E.2d at 973 (quoting *Erie–Haven,* 292 N.E.2d at 841). Durational language found in a deed, such as "so long as," creates a determinable easement. *Ind. Broad. Corp. v. Star Stations of Ind.,* 180 Ind.App. 207, 388 N.E.2d 568, 571 (1979). A use of a determinable easement outside the scope of the condition specified in the easement will result in the automatic termination of the easement. *Cf. GTA,* 358 N.E.2d at 751–52 (considering whether negotiations to use a determinable leasehold as a fast food restaurant terminated the determinable leasehold interest, which was granted "so long as" the premises were used as an automobile service station).

The Hakins, Hurst, Gould, Pence, and Brower deeds grant determinable easements. Each deed contains phrases indicating that the easements will terminate immediately when they are no longer used for railroad purposes. The Hakins and Hurst deeds both grant easements "to the use of said [railroad] Company, so long as the same shall be required for the use and purposes of said Road." *Macy Elevator,* 97 Fed.Cl. at 714–15. The Pence deed conveyed a railroad purpose easement "so long as it shall be used for a Rail Road & no longer." *Id.* at 716. The Brower deed conveyed an easement "so long as said [railroad] company may use the same for Railroad purposes." *Id.* The Gould deed provides that "When said land herein Shall cease to be used for Rail Road purposes, it shall revert back to the original tract." *Id.* All of these deeds granted determinable easements under Indiana law.[5]

---

4. Easements may also be extinguished through adverse possession, *see, e.g., King v. Wiley,* 785 N.E.2d 1102, 1108–09 (Ind.Ct.App.2003), and, under Indiana law, easements created through necessity will terminate once the necessity out of which the easement arose ceases to exist, *Zakutansky v. Kanzler,* 634 N.E.2d 75, 84 (Ind.Ct.App. 1994). These types of easements, however, are not at issue in the present case.

5. Although the Gould deed does not use the term "so long as," the durational "when" coupled with a specific purpose creates a determinable easement under Indiana law. *See Erie–Haven,* 292 N.E.2d at 841 ("The nature, extent and duration of an easement created by an express agreement or grant must be determined by the provisions of the instrument creating the easement.").

■ The determinable railroad purpose easements created by the Hakins, Hurst, Gould, Pence, and Brower deeds automatically terminated by their terms when the easements ceased to be used for railroad purposes. *See, e.g., Erie–Haven*, 292 N.E.2d at 841; *Larry Mayes*, 744 N.E.2d at 972–73; *Trust No. 6011*, 967 N.E.2d at 14–16. Given the Indiana Supreme Court's recent holding that "railbanking" and recreational trail use as authorized by the NITU do not qualify as "railroad purposes" in Indiana, *Howard*, 964 N.E.2d at 784, the trail use agreement between the trail operator and the railroad pursuant to the Trails Act, and the subsequent authorization of "railbanking" and trail use in the NITU, violate the purpose for which these determinable easements were granted. As a matter of Indiana law, the easements automatically reverted to the underlying landowners. The continued imposition of the recreational trail easement authorized by the NITU "blocked" plaintiffs' "state law reversionary interests" in the determinable railroad purpose easements. *Ladd*, 630 F.3d at 1023. For the purposes of determining just compensation, therefore, plaintiffs' properties must be valued in their "before" status as unencumbered land. *See Rogers v. United States*, 101 Fed.Cl. 287, 294 (2011) (holding that where the express terms of a deed provided for "abandonment" of an easement when the railroad stopped using the easement for railroad purposes, the land reverted to the underlying landowners regardless of state law abandonment principles, and the "before" condition of the plaintiffs' property was valued as unencumbered land).

**2. The railroad purpose easements created by the "Release of Right–of–Way" deeds, the Schindler deed, condemnation, or prescription terminated because the use of the easements as a recreational trail goes far beyond their original scope.**

The remaining deeds at issue in this case do not contain express language that calls for automatic easement termination when the easements are used for purposes other than the operation of a railroad. The Schindler deed, which provides that the grantors "release" a right-of-way "for the purpose of constructing" a railroad, and the remaining "Release of Right–of–Way" deeds, which indicate that the grantor shall "release, relinquish forever, quit claim and convey" land to the railroad company for a right-of-way, do not contain the durational language necessary to create a determinable easement. *Macy Elevator*, 97 Fed.Cl. at 714–15. The railroad purpose easements created by condemnation and prescription also lack any deeded language expressly limiting the duration of those easements. However, under Indiana law, such express language is not required to terminate an easement when that easement is used in a way that goes far beyond its original purpose. *See Selvia*, 295 N.E.2d at 874.

The law governing easements generally provides that the use of an easement for an "unauthorized" purpose is not sufficient to cause a forfeiture of the easement in the absence of particular deeded language to the contrary. *Restatement (Third) of Property (Servitudes)* § 8.3 cmt. c (2012) ("[A] court order of forfeiture for excessive use is warranted only if injunctive relief cannot practi-

The court also notes that the terms of these deeds create determinable easements, which automatically revert to the landowner upon the happening of the condition by no action of the grantor, rather than easements subject to "condition subsequent," which require a grantor to assert his or her right of re-entry before the easement may revert. Indiana common law disfavors the creation of a condition subsequent when a deed simply sets forth a specific purpose. *Sheets v. Vandalia R.R. Co.*, 74 Ind.App. 597, 127 N.E. 609, 611 (1920) ("A condition subsequent will not be raised by implication from a mere declaration in the deed that the grant is made for a special and particular purpose, without being coupled with words appropriate to make such a condition."). Rather, to create a condition subsequent, a statement of purpose must be coupled with language manifesting the clear and unmistakable intent of the parties to create a condition subsequent. *Id.* Certain words and phrases that create an affirmative condition on the grant, especially when coupled by an express reservation of a right of re-entry, create a condition subsequent. *See Brady v. Gregory*, 49 Ind.App. 355, 97 N.E. 452, 454 (1912); *see also Sheets*, 127 N.E. at 611. The deeds at issue here do not contain the specific language necessary to create a condition subsequent under Indiana law.

cably be used to prevent excessive or unauthorized use of the servitude."); 25 Am. Jur.2d *Easements and Licenses* § 99 (2012) ("Use of an easement for an unauthorized purpose, or the excessive use or misuse of it, is not sufficient to cause a forfeiture of the easement, unless the misuse of the easement is willful and substantial and not merely minor or technical."). However, minor "unauthorized" uses must be distinguished from "substantial" misuses that make it impossible for the authorized use of the easement to continue. In the former situation the easement is not terminated. In the latter, the easement may be extinguished. *See* 25 Am. Jur.2d *Easements and Licenses* § 99 ("However, an increase in the burden of the servitude of the easement, such as expanding its use from a private to a public way, may subject the easement to extinguishment for misuse."); *see also* 28A C.J.S. *Easements* § 165 (2012) ("An easement is not lost by its use in an unauthorized manner or to an unauthorized extent, unless it is impossible to sever the increased burden so as to preserve the easement and yet impose on the servient tenement only the burden originally intended.").

The law in Indiana conforms to these general principles. When an easement is subject to misuse in Indiana, the courts prefer injunctive relief to termination or forfeiture of the easement. *Selvia*, 295 N.E.2d at 874. However, the Indiana courts have recognized an exception to this general rule for changes in use that are far outside the scope of the original easement. In *Selvia v. Reitmeyer*, the Indiana Court of Appeals held that "[m]isuser of an easement does not permit forfeiture unless … it is impossible to sever the increased burden in such a way as to preserve to the dominant tenement that to which it is entitled." *Id.*

Courts and legislatures in other jurisdictions have adopted similar versions of this rule. *See, e.g., Brown v. Hanson,* 743 N.W.2d 677, 681 (S.D.2007) (holding that under a South Dakota statute governing termination of easements, an unauthorized use of an easement warrants forfeiture if it is "incompatible" with the authorized use such that it is incapable of association or harmonious coexistence with the "nature or exercise" of the easement); *Frenning v. Dow,* 544 A.2d 145, 146 (R.I.1988) (quoting *Penn Bowling Recreation Ctr., Inc. v. Hot Shoppes, Inc.,* 179 F.2d 64, 66 (D.C.Cir.1949) (holding that the right to an easement is not lost by using it in an unauthorized manner or to an unauthorized extent "unless it is impossible to sever the increased burden so as to preserve to the owner of the dominant tenement that to which he is entitled, and impose upon the servient tenement only that burden which was originally imposed upon it")); *Vieth v. Dorsch,* 274 Wis. 17, 79 N.W.2d 96, 98 (1956) (requiring "willful and substantial" misuse that cannot be separated from permissible use in order to justify forfeiture of an easement); *Perry v. City of Gainesville,* 267 S.W.2d 270, 273 (Tex.Civ.App.1954) (determining that misuser justifies forfeiture when the use for which the property is dedicated becomes impossible to execute, or where the objective of the authorized use "wholly fails" upon misuse).

The Indiana rule permitting termination of an easement where the misuse goes far beyond the terms of the easement applies here. As this court and the Federal Circuit have held, it would be "difficult to imagine that either party to the original [railroad purpose] transfers had anything remotely in mind that would resemble a public recreational trail." *Macy Elevator,* 97 Fed.Cl. at 728 (quoting *Preseault v. United States ("Preseault II"),* 100 F.3d 1525, 1543 (Fed.Cir.1996)). The continued recreational trail use authorized by the NITU thus creates an inseparable misuse of the railroad purpose easements. *See Toews v. United States,* 376 F.3d 1371, 1376 (Fed.Cir.2004) ("And it appears beyond cavil that use of these easements for a recreational trail—for walking, hiking, biking, picnicking, frisbee playing, with newly-added tarmac pavement, park benches, occasional billboards, and fences to enclose the trailway—is not the same use made by a railroad, involving tracks, depots, and the running of trains. The different uses create different burdens."). Recreational trail use as authorized by the Trails Act, which occupies the full extent of the railroad purpose easements and does not allow for any continued rail traffic, certainly goes far beyond the original pur-

pose of the railroad purpose easements, as the Indiana Supreme Court has recently recognized: "The transformation of a line of railway to a public trail imputes a different purpose. The operation [of] a railroad line is a commercial enterprise of transport. Whereas a[ ] public trail is an activity of 'recreation, not transportation.' " *Howard,* 964 N.E.2d at 784 (citing *Preseault II,* 100 F.3d at 1554).

Indiana law therefore supports the termination of the easements conveyed by the Schindler deed and "Release–of–Right–of–Way" deeds, and of the easements created by condemnation and prescription. Accordingly, as to the remaining easements, the plaintiffs owned their properties free of any railroad purpose easements when the NITU was issued. Plaintiffs' properties in the "before" condition must be valued as properties unencumbered by any railroad purpose easements.[6]

## III. CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is **GRANTED,** and the government's cross-motion is **DENIED.** Pursuant to this court's April 27, 2012 order, the parties should have attempted to select an appraiser by June 20, 2012. If the parties were unable to mutually agree upon a joint appraiser, the parties shall file a joint status report by **June 30, 2012.** Otherwise the parties shall file a joint status report regarding the status of the appraisal process by **August 31, 2012.**

**IT IS SO ORDERED.**

---

6. Because the court concludes that the entire universe of easements at issue in this case were terminated under Indiana law at the time the NITU was issued, it is not necessary to reach plaintiffs' alternative argument regarding "abandonment." Plaintiffs' properties must be valued in the "before" condition as unencumbered fee land.